BIBLE ET AL. *v.* STATE OF INDIANA.

[No. 469S82. Filed January 16, 1970. No petition for rehearing filed.]

George E. Sawyer, John L. Rybolt, John Preston Ward, Indianapolis, for appellants.

Theodore L. Sendak, Attorney General, Robert F. Hassett, Deputy Attorney General, for appellee.

HUNTER, C.J.—This is an appeal from a hearing on a petition in the Marion County Juvenile Court in which appellants, Peter Andrew Bible and John Phillip Grundy, ages 15 and 13 respectively, were determined to be delinquents pursuant to Ind. Ann. Stat. § 9-3204 (1969 Supp.) :

" 'Delinquent child' defined.—The words 'delinquent child' shall include any boy under the full age of eighteen [18] years and any girl under the full age of eighteen [18] years who:
(1) Commits an act which, if committed by an adult, would be a crime not punishable by death or life imprisonment; . . ."

The act allegedly committed by each of the appellants was assault and battery, to-wit: "Did then and there unlawfully in a rude, insolent and angry manner beat and strike one Alvis Light W/M/51 of 1502 E. 17th [St.] then and there being contrary to the statute provided and against the peace and dignity of Indiana." Under Ind. Ann. Stat. § 10-403 (1956

Repl.), assault and battery is a crime which, if committed by an adult, would not be punishable by death or life imprisonment.

Accordingly, upon a finding that the appellants had committed the acts as charged, the court made the following orders: (1) that Peter Andrew Bible be placed on probation under standard conditions, and (2) that John Phillip Grundy be ordered continued on suspended commitment to the Indiana Boys' School.

Prior to the above proceedings, appellants had filed a motion asking for a trial by jury at their delinquency hearing. These motions were overruled by the judge of the juvenile court in consonance with Ind. Ann. Stat. § 9-3215 (1969 Supp.) which provides in part that:

"... All cases for the determination of a petition requesting that a person be determined to be a delinquent or dependent or neglected child shall be heard separately and apart from the trial of cases against adults, and the court shall hear and determine such cases *without a jury*: ..." (our emphasis).

Appellants then filed motions for a new trial alleging as error the court's overruling of their motions for a jury trial. The trial court overruled said motions for a new trial, whereupon appellants took a consolidated appeal to the Appellate Court. That appeal, upon petition by the appellee, State of Indiana, was transferred to this court because of the constitutional issue raised therein.

The sole question presented by the appellants' appeal is this: Does a juvenile have a constitutional right to a trial by jury in juvenile proceedings? Recognizing the importance of the question both to Indiana and to our sister states, and further, being very much aware of the rapidity of change in the area of juvenile rights[1] brought about by recent U. S.

---

1. Attorney General of Indiana, *Recent Cases Affecting Juvenile Court Procedure and Administration,* August 10, 1967.

Supreme Court decisions [discussed below], this court felt it wise to look to that court for guidance in deciding this case.

On November 12, 1969, the U. S. Supreme Court in a per curiam opinion, decided the case of *DeBacker* v. *Brainard* (1969), 392 U. S. 28, 24 L. Ed 2d 148. In that case the appellant, who was found to be a delinquent child under Neb. Rev. Stat. § 43-201(4), asked the court to decide whether the Fourteenth and Sixth Amendments, in light of the court's decisions in *Duncan* v. *Louisiana* (1968), 391 U. S. 145, 20 L. Ed. 2d 491; *Bloom* v. *Illinois* (1968), 391 U. S. 194, 20 L. Ed. 2d 522; and *In re Gault* (1967), 387 U. S. 1, 18 L. Ed. 2d 527, require a trial by jury in a state juvenile court proceeding based on an alleged act of juvenile delinquency which, if committed by an adult, would amount to a serious crime under the *Duncan* and *Bloom* cases, require a jury trial if requested.

Although the question in *DeBacker* is precisely the same as the one in the case at bar, the U. S. Supreme Court did not feel obliged to dispose of it. Quoting from their opinion, they said:

> "In *DeStefano* v. *Woods,* 392 U. S. 631, [20 L. Ed. 2d 1308, 88 S. Ct. 2093,] we held that *Duncan* and *Bloom* 'should receive only prospective application' and stated that we would 'not reverse state convictions for failure to grant jury trial where trials began prior to May 20, 1968, the date of this Court's decisions in *Duncan* v. *Louisiana* and *Bloom* v. *Illinois.*' 392 U. S., at 633, 635, [20 L. Ed. 2d at 1311, 1312.] Because appellant's juvenile court hearing was held on March 28, 1968—prior to the date of the decisions in *Duncan* and *Bloom*—appellant would have had no constitutional right to a trial by jury if he had been tried as an adult in a criminal proceeding. It thus seems manifest that this case is not an appropriate one for considering whether the Nebraska statute which provides that juvenile hearings are 'without a jury,' Neb. Rev. Stat. § 43-206.03(2), is constitutionally invalid in light of *Duncan* and *Bloom.*" 24 L. Ed. 2d at 152.

Therefore, since no position was taken by the U. S. Supreme Court in this matter, it is apparent that this court must decide

the question on the basis of our own judicial examination of the various cases, statutes, and constitutional principles pertinent thereto.

First it should be recognized that there was no special judicial system for juveniles at common law. Prior to the enactment of the various juvenile codes in the United States, most jurisdictions treated juveniles as adults in criminal proceedings and accorded them all of the privileges and rights as such. Among the rights thus extended and constitutionally recognized was the right to trial by jury.

Around the turn of this century, beginning with Illinois in 1899, a separate system of courts and procedures began to appear. As Mr. Justice Fortas noted in the landmark case of *In re Gault, supra:*

> "The early reformers were appalled by adult procedures and penalties, and by the fact that children could be given long prison sentences and mixed in jails with hardened criminals. They were profoundly convinced that society's duty to the child could not be confined by the concept of justice alone. They believed that society's role was not to ascertain whether the child was 'guilty' or 'innocent,' but 'What is he, how has he become what he is, and what had best be done in his interest and in the interest of the state to save him from a downward career.' The child—essentially good, as they saw it—was to be made 'to feel that he is the object of [the state's] care and solicitude,' not that he was under arrest or on trial. The rules of criminal procedure were therefore altogether inapplicable. The apparent rigidities, technicalities, and harshness which they observed in both substantive and procedural criminal law were therefore to be discarded. The idea of crime and punishment was to be abandoned. The child was to be 'treated' and 'rehabilitated' and the procedures, from apprehension through institutionalization, were to be 'clinical' rather than punitive.
>
> These results were to be achieved, without coming to conceptual and constitutional grief, by insisting that the proceedings were not adversary, but that the state was proceeding as *parens patriae.*" 387 U. S. at 15, 16, 18 L. Ed. 2d at 539, 540.

It was in that spirit that Indiana in 1903, created its first juvenile code, Acts 1903, ch. 237. Its rationale presently appears in the following quote from Ind. Ann. Stat. § 9-3201 (1956 Repl.)

"Purpose and basic principle.—The purpose of this act [§§ 9-3201—9-3225] is to secure for each child within its provisions such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents.

The principle is hereby recognized that children under the jurisdiction of the court are subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them."

Because the juvenile proceeding was *deemed to be noncriminal in nature* the strict procedural requirements of criminal trials were not deemed appropriate nor desirable. In the case of *In re Adams* v. *State* (1963), 244 Ind. 460, 465, 193 N. E. 2d 362, 364, this court noted that:

"Legislation dealing with juvenile courts and juvenile delinquency is the result of solicitude of the law for the welfare of the infant. Juvenile courts are generally considered to exercise a parental supervision over delinquent and neglected children as *parens patriae*. Such courts assume jurisdiction over juvenile delinquents for their protection, care and custody. Standing in *loco parentis*, they may exercise a supervision of delinquent children and may properly restrain their liberty in the exercise of discipline, rehabilitation and training. They are in a different group from that of adults, and the constitutional guaranties with reference to criminal procedure applying in the case of adults do not have the same application to infants by reason of the nature of the parental supervision necessary for their training, care and discipline."

Although Indiana's original Juvenile Code of 1903 granted trial by jury at the request of the juvenile [as did Acts 1941,

ch. 233, § 13], the Indiana General Assembly enacted certain amendments in 1945, one of which contained a provision that expressly denied the right at juvenile hearings. That provision has continued in force in our statutes and has been set out above, § 9-3215, *supra.* It should be noted at this point that the denial of trial by jury for juveniles has been the rule rather than the exception throughout the rest of the United States, even where such denial is not, unlike Indiana, expressly contained in a statute. See cases cited in 100 A. L. R. 2d 1241.

Furthermore because our juvenile proceedings are considered civil in nature and not criminal, the statutory denial of the right to trial by jury has never been thought to violate the Indiana Constitution. *State ex rel. Gannon* v. *Lake Circuit Court* (1944), 223 Ind. 375, 61 N. E. 2d 168. *State ex rel. Johnson* v. *White Circuit Court* (1947), 225 Ind. 602, 77 N. E. 2d 298. In *Gannon, supra,* this court held that Artcile 1, Section 20 of the Indiana Constitution applies only to civil actions triable by jury under the common law and consequently, creation of the juvenile courts is not unconstitutional on the ground that it does not provide for jury trial. Chief Justice Emmert in *Johnson, supra,* notes that an act of juvenile delinquency is not a crime. "The proceedings, therefore, for such purposes, do not have the formalities that a criminal proceeding has, including the right to a jury trial."

It would be easy indeed for us to stop here and conclude from the foregoing discussion that the juvenile, because of the special nature of the proceedings against him and the unique relationship he enjoys with the "parent" state, has no constitutional right to a trial by jury. We would merely be re-affirming what this court decided several years ago and further, we would find broad support in the case law through much of the country. As a further indication of the soundness of our position, we could point to the U. S. Supreme Court and argue that since they have never decided the question in over 70 years, they too have approved,

at least impliedly, the proposition that a juvenile in delinquency proceedings is not entitled to a jury.

We believe, however, that the better approach requires that this court re-examine the question in light of the recent body of law which we shall discuss later in this opinion, being careful to recognize the sensitive rights of the juvenile as well as the important interests of the state. This court must not permit the concepts of the past to constrict its thinking with regard to the rights accorded to juveniles nor by careless judicial action, decree anything today which would unduly weaken the foundation upon which the juvenile system is bottomed.

To begin with, the hearing at which the appellants in the case at bar were adjudged to be delinquents, was conducted in accordance with Ind. Ann. Stat. § 9-3215, *supra*. The statute grants to the juvenile judge broad and varied powers not only in the way he may conduct the hearing but also in the orders he may make pursuant to a finding of delinquency.

"9-3215. Hearing and judgment.—The court may conduct the hearing in an informal manner, and may adjourn the hearing from time to time. The names of the child or children, their parents, guardian or custodian, and the nature of the offense shall be a public record, if the court, in its discretion, shall so order and direct; and public admittance or participation in the chambers of the trial court shall be within the discretion of the trial judge. The trial court, in its discretion, may order and direct that any such child fifteen [15] years of age or older be fingerprinted and photographed for identification purposes and such fingerprint records and photographs, when so ordered by the court, shall be filed and kept by the appropriate sheriff's departments or police departments in files and records separate and apart from those pertaining to adult criminals. All cases for the determination of a petition requesting that a person be determined to be a delinquent or dependent or neglected child shall be heard separately and apart from the trial of cases against adults, and the court shall hear and determine such cases without a jury: Provided, however, the official court reporter shall be present in court and take down in shorthand the oral evidence given in all cases and note all rulings of the judge in respect to said cause.

If the court shall find that the child comes within the provisions of this act [§§ 9-3201—9-3225], it may by order duly entered, proceed as follows:

(1) Place the child on probation or under supervision in his own home or in the custody of a relative or other fit person, upon such terms as the court may determine;

(2) Commit the child to any suitable public institution or agency, which shall include, but is not limited to, the state institutions for the feeble-minded, epileptic, insane, or any other hospital or institution for the mentally ill, or commit the child to a suitable private institution or agency incorporated or organized under the laws of the state, and authorized to care for children or to place them in suitable approved homes;

(3) The court may make such child a ward of the court, a ward of the department of public welfare of the county, or a ward of any licensed child placing agency in the state willing to receive such wardship;

(4) May take cause under advisement or postpone findings and judgment for a period not to exceed two [2] years unless sooner requested by the party proceeded against in which event not to exceed ninety [90] days.

(5) Make such further disposition as may be deemed to be to the best interests of the child, except as herein otherwise provided.

No adjudication upon the status of any child in the jurisdiction of the court shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction, nor shall any child be charged with or convicted of a crime in any court, except as provided in section 14 [§ 9-3214] and section 23 [§ 9-3223] of this act. The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence operate to disqualify a child in any future civil service examination, appointment or application.

Whenever the court shall commit a child to any institution or agency it shall transmit with the order of commitment a summary of its information concerning such child."

It is evident from the statute that the judge is intended to have maximum flexibility in dealing with the juvenile. It was

conceived, and we think rightfully so, that the juvenile hearing was to be conducted free from the formalities, procedural complexities, and inflexible aspects of criminal proceedings. Having discarded the "punishment-alone theory" of yesteryear, the juvenile court was conceived as an institution where corrective and rehabilitative attention was to be given the juvenile, where he was to be subjected to the closest scrutiny and care in order to help him to avoid a life of crime.

During the hearing the juvenile court judge takes into account such factors as the child's age, his family life, the nature of the charges against him, the environment in which he lives, his relationship with his parents, previous acts of delinquency, and any other pertinent factors relevant to the child and his conduct. Upon the determination of these findings, he may then proceed to make the appropriate orders authorized by the statute § 9-3215, *supra*, utilizing not only his own experience in dealing with juveniles but also the sound advice of social workers, psychologists and psychiatrists. Hopefully, by encouraging informality and according the juvenile judge the widest possible discretion in dealing with the child, at least three goals are achieved.

(1) The child will feel that he is being dealt with fairly, firmly and compassionately by the state. The less complex the procedure and the less formal the relationship between judge and juvenile, the more likely the child will understand the proceedings before him and the disposition thereof. This factor more than any other is essential if he is to develop a respect for the law. Thrusting a child into a criminal trial-like procedure with all of the strangeness of motions, objections, presumptions and burdens, etc., most of which only his attorney would comprehend, would provide little therapeutic value to the child and likely would be psychologically harmful.

(2) In an informal setting the child can develop a meaningful relationship with the juvenile judge, a factor which often in itself is enough to motivate him to comply with the law. Many of the youths come from

fatherless homes, lacking the all-important direction from a man in the family, and often will repose sincere trust and respect in the juvenile judge as a substitute. Such a relationship is impossible to achieve in a strict adversary proceeding, and to reject it is unimportant would be to disregard human nature and deprive the juvenile of chance to adjust his conduct to comply with the law. It is through such a relationship that he may be made to recognize society's duties to him and his duty to society.

(3) The child in an informal hearing is less apprehensive and would likely be more cooperative in getting to the root of his own problems. A child that actively divulges his difficulties of home, family, friends, and school, is an easier child to rehabilitate than one who stands defiant before the court. The informality which induces a child to "get it off his chest," may be found in the judge's private chambers, or the courtroom. It is highly doubtful that he would feel so disposed in a trial court, faced with a hostile prosecutor and a stolid jury.

Our recognition of these and other attributes of the juvenile system has not opaqued our view of the dangers inherent therein. With broad discretion there is always the possibility of abuse; with informality, there is ever-present the danger of irregularity. Both this court and the Appellate Court, which has original appellate jurisdiction in juvenile appeals [Ind. Ann. Stat. §§ 4-214, 9-3221], have been mindful of the need for protecting the rights of juveniles and, through the years, have vigilantly guarded against their abuse.

In *State ex rel. Jones* v. *Geckler* (1938), 214 Ind. 574, 16 N. E. 2d 875, we set forth the rule that the truth of the charge constituting delinquency shall be determined in an adversary proceeding and that a juvenile is entitled to a change of judge where bias or prejudice is shown. In *Coyle* v. *State* (1951), 122 Ind. App. 217, 101 N. E. 2d 819, it was decided that in a proceeding to have a child declared a delinquent, it was improper for the judge to act as both judge and prosecuting attorney. Furthermore we have ruled that the juvenile court can acquire jurisdiction only if summons is

issued and served in strict compliance with the statute. *Ford* v. *State* (1952), 122 Ind. App. 315, 104 N. E. 2d 406; *Shupe* v. *Bell* (1957), 127 Ind. App. 292, 141 N. E. 2d 351; and *In re Johnson* v. *State* (1964), 136 Ind. App. 528, 202 N. E. 2d 895 hold that the juvenile could not be found to be a delinquent child without a hearing, after proper notice, in which he is apprised of the charges and evidence thereon, or without an opportunity to plead and defend himself. *State ex rel. McClintock* v. *Hamilton Circuit Court* (1968), 249 Ind. 333, 232 N. E. 2d 356. *In re Green* v. *State* (1952), 123 Ind. App. 81, 108 N. E. 2d 647. The opportunity to defend himself necessarily includes the right to a full hearing with counsel, confrontation of witnesses, and the right to present evidence in his own behalf, and unless these rights are first insured, the juvenile court may not waive its jurisdiction and transfer the cause to the criminal court. *Summers* v. *State* (1967), 248 Ind. 551, 230 N. E. 2d 320. We further held that before a juvenile may be waived to a criminal court for trial, the factual reasons for such waiver must be a matter of record after a full hearing. *Summers* v. *State, supra,* quoting from *Kent* v. *United States* (1966), 383 U. S. 541, 16 L. Ed. 2d 84.

In short, the courts of this state have followed the "fair treatment" under "due process" rule in dealing with juvenile problems and have done so long before its enunciation in *Pee* v. *United States* (1959), 274 F. 2d 556. Moreover, as we indicated in *Summers,* the disposition of juvenile matters should be guided by the succinct rule that "constitutional rights should not be grudgingly extended." *Cook* v. *State* (1951), 231 Ind. 695, 97 N. E. 2d 625. These principles shall and must guide us in dealing with the appellants' assertion that they have a constitutional right to be tried by jury in a juvenile delinquency proceeding.

The two leading decisions of the U. S. Supreme Court to which appellants point in support of their argument are the cases of *Kent* v. *United States, supra,* decided on March 21, 1966, and *In re Gault, supra,* decided on May 15, 1967. In

*Kent,* a minor, who admitted that he had participated in various offenses involving housebreaking, robbery, and rape, was tried as a criminal in the District Court for the District of Columbia and sentenced to serve 30 to 90 years in prison. The minor filed a motion to dismiss the indictment upon which he was tried on the ground that the waiver of exclusive jurisdiction by the Juvenile Court was invalid. His motion was overruled by the Courts of Appeals, but on certiorari, the Supreme Court reversed the conviction and remanded the case to the District Court for a hearing *de novo* on the issue of waiver. The Supreme Court found that, although the order of waiver recited that it was based on "full investigation" the court had failed to grant or rule on motions by petitioner's counsel that a hearing be held, and that he be given access to the petitioner's social records and other reports. In addition, the order recited no factual reason for granting the waiver, and it made no reference to the motions filed by petitioner's counsel.

In *Gault,* the U. S. Supreme Court held that a 15-year old juvenile, declared a delinquent in the Juvenile Court of Gila County, Arizona, was denied due process of law because the juvenile proceedings which preceded his commitment in a state institution did not measure up to the essentials of procedural due process and fair treatment. The Court spelled out four essentials which the Arizona Juvenile Code failed to provide: (1) written notice of the specific charge or factual allegations, given to the child and his parents or guardian sufficiently in advance of the hearing to permit preparation, (2) notification to the child and his parents of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child, (3) application of the constitutional privilege against self-incrimination, and (4) concluded that absent a valid confession, a determination of delinquency and an order of commitment could be based only on sworn testimony subject to the right of cross-examination in accordance with the

law and constitutional safeguards of procedural fair treatment.

Though neither *Kent* nor *Gault* decided that the essentials of due process and fair treatment include the right to a trial by jury, appellants in this case argue that that is the next logical and natural step that should be taken in the juvenile's behalf. Both of these cases are sharply critical of the failures of the juvenile systems of the various states and, as appellants would argue, have imposed the procedural requirements of due process as a means of protecting the juvenile from the excesses deriving from the assertion of *parens patriae* authority. Quoting Mr. Justice Fortas, in what has now become an oft-repeated battle cry of those who would eliminate all differences between the criminal and juvenile systems, appellants note the following language in *Kent:*

> "While there can be no doubt of the original laudable purpose of juvenile courts, studies and critiques in recent years raise serious questions as to whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guaranties (sic) applicable to adults. There is much evidence that some juvenile courts, including that of the District of Columbia, lack the personnel, facilities and techniques to perform adequately as representatives of the State in a parens patriae capacity, at least with respect to children charged with law violation. . . . *There is evidence, in fact, that there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children."* (our emphasis) 383 U. S. at 555, 556, 16 L. Ed. 2d at 94.

We agree with appellants' contention that in the case of *Gault,* the Court held that the Fourteenth Amendment standards of procedural due process are applicable to juvenile proceedings, but nothing in that opinion either expressly or impliedly says that *all* of the guarantees of the Bill of Rights need necessarily be applicable. Paulsen,

*Constitutional Domestication of the Juvenile Court,* Supreme Court Rev., 233 at 246 (1967).

On the contrary, we note a careful effort on the part of that court to emphasize that it intended no wholesale incorporation of the rights of adults in criminal trials, into the juvenile system.

> "We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile to the state. We do not even consider the entire process relating to juvenile 'delinquents.' For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process. . . . We consider only the problems presented to us by this case." *Gault, supra,* 387 U. S. at 13, 18 L. Ed. 2d at 538.

And further,

> "We do not . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." *Kent, supra,* 383 U. S. at 562, 16 L. Ed. 2d at 97, 98.

It is our opinion that, in making these pronouncements, the U. S. Supreme Court was relying on the following statement in *Pee* v. *United States, supra.*

> "The constitutional safeguards vouchsafed a juvenile in such proceedings are determined from the requirements of due process and fair treatment, and not by the direct application of the clauses of the Constitution which in terms apply to criminal cases."

Our reading of *Kent* and *Gault* insofar as we interpret them to leave undecided the question of the juvenile's right to trial by jury is supported by extensive case law decided subsequent to *Gault: Commonwealth* v. *Johnson* (1967), 211 Pa. Super. 62, 234 A. 2d 9. *Dryden* v. *Commonwealth* (1968), 435 S. W. 2d 457 (Ct. App., Ky.). *People* v. *"Y.O. 2404"* (1968), 57 Misc.

2d 30, 291 N. Y. S. 2d 510; *People* v. *Anonymous* (1968), 56 Misc. 2d 725, 289 N. Y. S. 2d 782; *In re Estes* v. *Hopp* (1968), 73 Wash. 2d 263, 438 P. 2d 205; *In re Johnson* (1969), Md. App., 255 A. 2d 419; *In re State of N. J. in the Interest of J. W.* (1969), 254 A. 2d 334; *In re Burrus* (1969), 4 N. C. App. 523, 167 S. E. 2d 454. We note also that there is a smaller, though no less cogent, body of case law which holds that in light of *Gault,* a juvenile is entitled to trial by jury. *Peyton* v. *Nord* (1968), 78 N. M. 717, 437 P. 2d 716; *De-Backer* v. *Brainard²* (1968), 183 Neb. 461, 161 N. W. 2d 508; *Nieves* v. *United States* (1968), 280 F. Supp. 994 (S.D.N.Y.).

The arguments contained in these cases have been of great benefit to us in arriving at our decision on this question, as were the oral arguments advanced by counsel before this court. However, after very careful consideration of the case law, our Juvenile Act and the guidelines formulated by the U. S. Supreme Court, we have reached the conclusion that a juvenile is not constitutionally entitled to a trial by jury at a delinquency hearing.

We believe that to institute the jury trial as a part of the juvenile court system would so formalize the procedures conducted therein as to destroy the very innovation brought about by our Juvenile Act. Should the jury system be imposed, the role of the juvenile judge would be reduced to that now exercised by his counterpart on the criminal court. We agree with the Superior Court of Pennsylvania that under our present systems, the juvenile court judge is supposed to be more than just a trier of fact.

"He must seek to instill in the child a sense of value, impart a feeling of security and belonging, communicate the importance and dignity of being a member of society and, hopefully, in this manner, prevent the child from pursuing

2. The majority of the Supreme Court of Nebraska concluded that a statute depriving juveniles of a jury trial in a juvenile proceeding was unconstitutional in the light of *Gault,* yet the statute was upheld because more than a majority of the court was required to declare it unconstitutional.

a criminal and antisocial career. A juvenile court judge must, in a unique manner, establish a relationship that will permanently alter the behavior patterns of the child. He must have patience, understanding, and a genuine interest in the welfare of the child and must direct all of his efforts toward rehabilitation." *Commonwealth* v. *Johnson, supra,* 234 A. 2d at 17.

The judge presently is carrying out this dual role in discharging his responsibilities under the procedural due process requirements announced in *Gault* and summarized above, those guidelines being entirely consistent with the thrust of the Juvenile Act and a vital improvement thereto.

However it is our firm conviction that questionable benefits accruing to a juvenile in having a delinquency proceeding heard by a jury would be far outweighed by the diminution of the power and influence exercised by the judge.

"A jury trial, with all the clash and clamor of the adversary system that necessarily goes with it, would certainly invest a juvenile proceeding with the appearance of a criminal trial, and create in the mind and memory of the child the same effect as if it were. In our opinion there is more to be lost than gained. Certainly we cannot regard a jury as a better, fairer, more accurate fact-finder than a competent and conscientious circuit judge. There may be some judges who do not fit this description, but neither do all juries." *Dryden* v. *Commonwealth, supra,* 435 S. W. 2d at 461.

Our reasoning herein is further buttressed, we believe, by the recommended changes set forth in the report of the President's Commission on Law Enforcement and Administration of Justice. Those recommendations do not include the institution of jury trial in juvenile proceedings. Of equal significance is the Commission's Task Force Report, *Juvenile Delinquency and Youth Crime* (1967), which approves the observation that

"A jury trial would inevitably bring a good deal more formality to the juvenile court without giving the youngster a

demonstrably better factfinding process than trial before a judge."

In addition the Commission makes the following statement:

"Most states do not provide jury trial for juveniles. Even Illinois, New York, and California, which have recently revised their juvenile court laws to increase procedural safeguards for the child, have not extended the right to trial by jury. There is much to support the implicit judgment by these states that trial by jury is not crucial to a system of juvenile justice. *As this report has suggested, the standard should be what elements of procedural protection are essential for achieving justice for the child without unduly impairing the juvenile courts distinctive values.*" (our emphasis).

This court takes the position that the presence of a jury would interfere with the proper administration of the juvenile system without adding any appreciable protection to the rights of the juvenile. We believe that, among others, his rights to counsel, cross-examination of witnesses, confrontation of his accusers, and the privilege against self-incrimination, afford the juvenile the constitutional protection he requires without diminishing the beneficial elements intended for him by our Juvenile Act.

The case at bar strengthens our conviction that the uniqueness of the juvenile system should neither be emasculated nor destroyed. In this period of rapid social change and growing urban problems, the commission of crimes by juveniles is increasing at a staggering rate. The cases of the two boys before us are by no means unusual. The record reveals that appellant, Peter Bible, has already had eight delinquency hearings for acts he committed, which if committed by an adult, would have been punishable as crimes. His series of offenses began when he was 11 years old. Similarly, appellant, John Phillip Grundy, has had six different delinquency hearings for the commission by him of a variety of serious acts, the first of which occurred when he was 12 years old. The

orders of the Marion County Juvenile Court which resulted from the hearings in this cause were, in our view, both compassionate and understanding. In spite of their respective histories of serious offenses, which undoubtedly resulted from their broken home and poor circumstances, appellants were given another chance to correct their ways. The record demonstrates unequivocally that these two boys received the best of "both worlds" referred to in *Kent*. Their delinquent behavior, like that of thousands of other juveniles, requires the patience and protection which only the juvenile system is designed to provide. These boys don't need a jury, they need rehabilitation.

We believe that while the U. S. Supreme Court recognizes the need to apply constitutional guarantees of procedural due process to the juvenile courts as we do in Indiana, however we do not believe the court intends thereby to impose the right to a jury trial irrespective of its harmful effects on the juvenile system. Accordingly, for the reasons set forth in this opinion, we hold that the judgment of the Juvenile Court denying appellants' motions for trial by jury should be affirmed.

Judgment affirmed.

Arterburn, DeBruler and Givan, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 254 N. E. 2d 319.