## JAMES B. CLEMONS *v.* STATE OF INDIANA.

[No. 3-673A72. Filed October 30, 1974. Rehearing denied November 27, 1974. Transfer denied March 13, 1975.]

*James V. Tsoutsouris,* of Valparaiso, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

STATON, J.—James Clemons was seventeen years old when a delinquency petition charging him with first degree burglary, transportation of stolen property across the state line, and possession of false selective service registration cards was filed in juvenile court. A second petition was filed by the prosecutor requesting that James Clemons be waived from juvenile court jurisdiction so that he could be tried as an adult pursuant to IC 1971, 31-5-7-14 (Burns Code Ed.). After the waiver hearing, Clemons was waived by the juvenile court to the Porter Superior Court. Clemons pled guilty to a charge of third degree burglary and was sentenced to a term not to exceed one year on the Indiana State Farm. His appeal to this Court raises three issues:

Issue One:     Is IC 1971, 31-5-7-14 (Burns Code Ed.) unconstitutional for failure to provide standards for waiver?

Issue Two:     Was Clemons denied procedural due process by the admission of hearsay at his waiver hearing?

Issue Three:   Was there sufficient evidence to support the waiver order?

In our review of these three issues, we conclude that IC 1971, 31-5-7-14, *supra,* is not unconstitutional, that Clemons was accorded a fair hearing fulfilling the requirements of due process and that there was sufficient evidence to support the waiver order. We affirm.

# I.
## Constitutionality

There is a strong presumption favoring the constitutionality of a statute. *Cheaney* v. *State* (1972), 259 Ind. 138, 285 N.E. 2d 265, *cert. denied* 410 U.S. 991, 93 S.Ct. 1516, 36 L.Ed.2d 189 (1973); *Hicks* v. *State* (1967), 249 Ind. 24, 230 N.E. 2d 757.

Clemons contends that IC 1971, 31-5-7-14 is void for vagueness in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 12 of the Indiana Constitution. He relies upon *People* v. *Fields* (1972), 388 Mich. 66, 199 N.W.2d 217 which held a statute similar to the Indiana waiver statute to be an unconstitutional delegation of legislative power to the judiciary.

There has been some confusion between the non-delegation doctrine and procedural due process. This is understandable since the standards requirement in delegation cases is evolving into a protection of the individual from arbitrary or discriminatory exercises of discretion. *See People* v. *Fields* (1974), 391 Mich. 206, 216 N.W.2d 51, *aff'd on rehearing* (dissenting opinion); *Warren* v. *Marion County* (1960), 222 Or. 307, 314, 353 P.2d 257, 261; DAVIS, ADMINISTRATIVE LAW TREATISE § 2.00 (1970 Supp.). However, we have concluded that IC 1971, 31-5-7-14 does not violate either the non-delegation doctrine or the due process clause.

We will treat the delegation of legislative power challenge solely as a challenge to separation of powers under Article 3, § 1 and Article 4, § 1 of the Indiana Constitution. Although the non-delegation doctrine in Indiana prohibits the legislature from delegating its power to make law, the legislature can delegate power to determine facts or the state of things upon which the application of the law depends. *Kryder* v. *State* (1938), 214 Ind. 419, 424, 15 N.E.2d 386; *City of Aurora* v. *Bryant* (1960), 240 Ind. 492, 165 N.E.2d 141; *Noble* v. *City of Warsaw* (1973), 156 Ind.

App. 618, 297 N.E.2d 916; 16 AM.JUR.2d *Constitutional Law* § 256 (1964). The challenged statute, IC 1971, 31-5-7-14 (Burns Code Ed.) provides:

"If a child fifteen [15] years of age or older is charged with an offense which would amount to a crime if committed by an adult, the judge, after full investigation, may waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such court may exercise the powers conferred upon the juvenile court in this act [31-5-7-1—31-5-7-25] in conducting and disposing of such case: Provided, That the judges of the juvenile courts of this state who shall waive the jurisdiction of such child as provided herein may at the time of the waiver fix a recognizance bond for the person to answer the charge in the court which would have jurisdiction of such offense if committed by an adult."

As Justice DeBruler recognized in *Atkins* v. *State* (1972), 259 Ind. 596, 290 N.E.2d 441, the standards to be used by the juvenile judge in making the decision to either waive or retain jurisdiction are derived from the structure and purpose of the juvenile justice system itself. The overall purpose of the juvenile justice system is found in IC 1971, 31-5-7-1 (Burns Code Ed.) as follows:

"The purpose of this act [31-5-7-1—31-5-7-25] is to secure for each child within its provisions such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents."

Thus, under IC 1971, 31-5-7-14, the juvenile court judge must determine if the child is 15 years or older, if he is charged with an offense which would amount to a crime if committed by an adult, and if waiver will serve the child's welfare and the best interests of the state. This is not lawmaking; it is an exercise of judicial discretion. We note that the Supreme Courts of Kansas, Massachusetts, Nevada

and New Mexico have declared similar broad standards sufficient to overcome an unconstitutional delegation challenge. *State ex rel. Londerholm* v. *Owens* (1966), 197 Kan. 212, 416 P.2d 259; *In re Juvenile* (1974), 364 Mass. 531, 306 N.E.2d 822; *Lewis* v. *State* (1970), 86 Nev. 889, 478 P.2d 168;[1] *State* v. *Doyal* (1955), 59 N.M. 454, 286 P.2d 306 [recently reaffirmed in *State* v. *Jimenez* (1972), 84 N.M. 335, 503 P.2d 315].[2] Only *People* v. *Fields, supra,* has held the Michigan waiver statute to be an unconstitutional delegation. In *In re Juvenile, supra,* 306 N.E.2d at 827 n.7, the Supreme Court of Massachusetts expressly refused to follow the *Fields* case. The *Fields* opinion has been criticized. Note, *Constitutional Law—Juvenile Waiver Statute—Delegation of Legislative Power to Judiciary,* 1973 WIS. L. REV. 259.[3]

We also refuse to follow the *Fields* case. We conclude that IC 1971, 31-5-7-14 does not delegate legislative authority to the judiciary.

The second constitutional argument by Clemons is that the lack of precise standards in IC 1971, 31-5-7-14 results in a denial of due process in two ways: (1) the standards provided are so vague as to allow arbitrary, capricious or discriminatory decision-making and (2) the standards are so unclear that the juvenile cannot effectively prepare for the waiver hearing.[4] We hold that the standard for "the child's

---

1. The Nevada waiver statute and general purpose clause discussed in the *Lewis* case are almost identical to Indiana's waiver statute and general purpose clause. See NEV. REV. STAT. §§ 62.080 and 62.290.

2. We note that the appellate courts of this State have held that granting a court a similar broad discretion to determine what is in a city's interest under an annexation statute is not an unconstitutional delegation of legislative power. See *City of Aurora* v. *Bryant* (1960), 240 Ind. 492, 165 N.E.2d 141; *Noble* v. *City of Warsaw* (1973), 156 Ind. App. 618, 297 N.E.2d 916.

3. The Supreme Court of Michigan in an opinion on rehearing has expressed regret that the non-delegation doctrine was adopted as the vehicle for declaring their waiver statute unconstitutional. See *People* v. *Fields* (1974), 391 Mich. 206, 216 N.W.2d 51, 53.

4. Clemons argues that IC 1971, 31-5-7-14 is unconstitutionally vague for failure to provide proper notice of the conduct proscribed by the statute or the probable consequences of engaging in the proscribed conduct. However, IC 1971, 31-5-7-14 does not describe criminal conduct but merely provides a procedure for the waiver of jurisdiction by the juvenile court.

welfare and the best interests of the state" expressed in IC 1971, 31-5-7-1 is a sufficient guideline to save IC 1971, 31-5-7-14 from being void on its face for vagueness. Similar general standards have been upheld in other jurisdictions answering attacks on their waiver statutes for being unconstitutionally vague. See *Briggs* v. *United States* (1955), 96 U.S. App. D.C. 392, 226 F.2d 350; *L.* v. *Superior Court of Los Angeles County* (1972), 7 Cal.3rd 592, 498 P.2d 1098, 102 Cal. Rptr. 850; *Sherfield* v. *State* (Okla. Cr., 1973), 511 P.2d 598; *In re Correia* (1968), 104 R.I. 251, 243 A.2d 759; *In re Salas* (1974), Utah, 520 P.2d 874; *In re F.R.W.* (1973), 61 Wis.2d 193, 212 N.E.2d 130, *cert. denied*, 416 U.S. 974, 94 S.Ct. 2000, 40 L.Ed.2d 563 (1974). As the Supreme Court of Wisconsin stated in *In re F.R.W., supra,* 212 N.W.2d at 139, citing *Miller* v. *Quatsoe* (E.D. Wis. 1971), 332 F.Supp. 1269, 1275:

> " 'Unlike a typical criminal action, a juvenile waiver proceeding vests the judge with a wide amount of discretion in making his determination. In his decision making, the juvenile judge does not simply deal with a specific factual incident in the accused's life as does a criminal court judge, but rather the juvenile judge must consider the juvenile's past, his future, his mind, and his acts and then balance these factors against the safety, needs and demands of society. . . .' "

See also, *Kent* v. *United States* (1966), 383 U.S. 541, 552, 86 S.Ct. 1045, 16 L.Ed.2d 84. The Legislature has recognized the inherent difficulty in identifying the varied merit-factors to be considered by the juvenile court judge and the need for a consideration of each case on its own merit-factors.

The juvenile is protected from arbitrary, capricious or discriminatory decision-making by the safeguards enunciated in *Summers* v. *State* (1967), 248 Ind. 551, 230 N.E.2d 320; *Atkins* v. *State* (1972), 259 Ind. 596, 290 N.E.2d 441 and *Kent* v. *United States, supra.* Both *Kent* v. *United States* and *Summers* v. *State, supra,* recognize the necessity that a waiver order be accompanied by a statement of the reasons for the waiver order of sufficient specificity to permit meaningful

review. *Atkins* v. *State, supra,* recognizes a presumption in favor of disposing of juvenile matters within the juvenile system. If the reasons given for waiver do not explicitly justify the waiver order in light of "the child's welfare and the best interests of the state" then such waiver order would be reversed on appeal. Appellate review has long been recognized as a check upon discretionary decision-making. *Ritter* v. *Ritter* (1839), 5 Blackf. (Ind.) 81.

The standard for "the child's welfare and the best interests of the state" is sufficient notice to the juvenile to enable preparation for the waiver hearing. *Summers* v. *State, supra,* specifically gives the juvenile the right to present evidence of any circumstances that would entitle him to the benefits inherent in the juvenile justice system. In determining what "the child's welfare and the best interests of the state" requires, the juvenile court judge must necessarily consider:

1. the nature of the offense
2. whether it is part of a repetitive pattern of juvenile offenses
3. whether the child is beyond rehabilitation under the juvenile justice system
4. whether waiver is necessary to protect the public security.[5]

*Kent* v. *United States, supra,* gives the juvenile's counsel access to social, probation or similar reports in preparing for the waiver hearing. A broad standard is constitutionally sound when proper safeguards are provided. We conclude that IC 1971, 31-5-7-14 is not unconstitutionally vague on its face.[6]

---

5. We note that prosecutive merit was also a factor to be considered under the criteria set forth in the Appendix to *Kent* v. *United States, supra,* and under guidelines set out in *Summers* v. *State, supra.* However, this factor was held to be insufficient alone to support a waiver order in *Atkins* v. *State, supra.*

6. Although we hold IC 1971, 31-5-7-14 (Burns Code Ed.) to be constitutional on its face, we do not foreclose the possibility that in some future case it may be found to have been unconstitutionally applied.

## II.

## Hearsay

Clemons contends that he was denied "the procedural due process right of freedom from hearsay evidence." To support this contention, he urges that under the rationale of *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, a juvenile is entitled to all the procedural rights afforded a criminal defendant. We reject the "total rights" concept of juvenile justice. The admission of hearsay evidence at a juvenile waiver hearing is not a denial of due process per se.

Although recent decisions of the United States Supreme Court and the Supreme Court of Indiana have greatly expanded the rights of juveniles in juvenile proceedings, the total rights concept argued for by Clemons has not been adopted.[7] *McKeiver* v. *Pennsylvania* (1971), 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647; *Bible* v. *State* (1970), 253 Ind. 373, 254 N.E.2d 319. As the United States Supreme Court stated in *McKeiver* v. *Pennsylvania, supra,* 403 U.S. at 551, 91 S.Ct. at 1989:

> "If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it."[8]

7. For recent cases expanding juvenile's rights, see *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368; *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; *Kent* v. *United States* (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; *Lewis* v. *State* (1972), 259 Ind. 431, 288 N.E.2d 138; *Pigg* v. *State* (1969), 253 Ind. 329, 253 N.E.2d 266; *Summers* v. *State* (1967), 248 Ind. 551, 230 N.E.2d 320.

8. See also the following: In *Kent* v. *United States* (1966), 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84:

> "We do not mean . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment. . . ."

In *In re Gault* (1967), 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527:

> "We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile to the state. We do not even consider the entire process relating to juvenile 'delinquents.' For example, we are not here concerned with the pro-

The standard for determining what due process requires in a particular juvenile proceeding is "fundamental fairness." *McKeiver* v. *Pennsylvania, supra,* 403 U.S. at 543, 91 S.Ct. 1976; *Bible* v. *State, supra,* 253 Ind. at 385, 254 N.E.2d 319; *Patterson* v. *Hopkins* (N.D. Miss. 1972), 350 F.Supp. 676.

In examining the question of whether "fundamental fairness" at a juvenile waiver hearing requires the exclusion of hearsay evidence, it is important to understand the nature of the waiver hearing.[9] Unlike the delinquency hearing, a waiver hearing is dispositional in nature. As the Supreme Court of Washington stated in *State* v. *Piche* (1968), 74 Wash. 2d 9, 442 P.2d 632, 635, *cert. denied* 393 U.S. 1041, 89 S.Ct. 666, 21 L.Ed.2d 588 (1969).

> "In determining whether the essentials of due process and fair treatment were provided in the instant case, it is important to keep in mind the exact nature of a juvenile court transfer [waiver] hearing. Such a hearing does not result in a determination of delinquency. . . .; does not result in a determination of guilt as may a criminal trial; and does not directly result in confinement or other punishment as

cedures or constitutional rights applicable to the pre-judicial status of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process. . . . We consider only the problems presented to us by this case. . . ."

*In re Winship* (1970), 397 U.S. 358, 367, 90 S.Ct. 1068, 1074, 25 L.Ed.2d 368:

"We conclude, as we concluded regarding the essential due process safeguards applied in *Gault,* that the observance of the standard of proof beyond a reasonable doubt 'will not compel the States to abandon or displace any of the substantive benefits of the juvenile process.' . . ."

*In re D.M.D.* (1972), 54 Wis.2d 313, 195 N.W.2d 594, 596:

". . . Due process and fair treatment are to mark juvenile proceedings as well as adult trials. Both have a common harbor, the fair and just disposition of matters before the court, but they may sail by different routes to the shared destination. Each must avoid the reefs of constitutionally assured protections, but they need not sail side by side in so doing. Any analogy established between steps in juvenile proceedings with stages in the processing of criminal cases may be arguably persuasive, but it is not controlling."

9. Several courts have recently held that hearsay is inadmissible in a juvenile delinquency hearing as a violation of due process. See *In re Cromwell* (1963), 232 Md. 409, 194 A.2d 88; *Krell* v. *Sanders* (1959), 168 Neb. 458, 96 N.W.2d 218; *In re D.C.* (1971), 114 N.J. Super. 499, 277 A.2d 402; *In re Agler* (1969), 19 Ohio St.2d 70, 249 N.E.2d 808; *Gilbert* v. *Commonwealth* (1973), 214 Va. 142, 198 S.E.2d 633.

may both a delinquency hearing and a criminal proceeding. In short, the transfer hearing is not an adversary proceeding. Rather, the sole purpose of the transfer hearing, as we have recently said, is to determine 'whether best interests of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult.' . . ."

See also *State* v. *Carmichael* (1973), 35 Ohio St.2d 1, 298 N.E.2d 568, *cert. denied* 414 U.S. 1161, 94 S.Ct. 922, 39 L.Ed. 2d 113 (1914) and *State ex rel. Juvenile Dept. of Marion County* v. *Johnson* (1972), 11 Or. App. 313, 501 P.2d 1011, rejecting the contention that a waiver hearing should be considered adjudicatory in nature. Also, it should be noted that the right to confrontation of witnesses extended to a juvenile at a waiver hearing in *Summers* v. *State, supra,* does not mandate application of the hearsay rules. *Cf. Dutton* v. *Evans* (1970), 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213; *California* v. *Green* (1970), 339 U.S. 149, 155, 90 S.Ct. 1930, 26 L.Ed.2d 489.[10]

We conclude that fundamental fairness does not require the exclusion of hearsay in the waiver hearing setting. Just as in the judicial function of sentencing, consideration must be given to such factors as the previous record, background, and possibility for rehabilitation of the particular individual before the Court. The decision-making performed by the trial judge in sentencing is analogous to the waiver determination by a juvenile court judge. As we stated in *Hineman* v. *State* (1973), 155 Ind. App. 293, 292 N.E.2d 618, 624:

".  .  . The strict rules of evidence applicable during trial are no longer applicable at sentencing where the precommitment report may be a dominate influence. This basic difference was drawn by the Supreme Court of the United States in Williams v. New York (1949), 337 U.S. 241, 246-247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337:

10. Although Clemons contends that his Sixth Amendment right to confrontation of witnesses has been violated, we point out that the Sixth Amendment right applies specifically to criminal prosecutions and is inapplicable to the case at bar.

'. . . Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.' "

Other jurisdictions have considered the applicability of the hearsay rules in juvenile waiver hearings. They have concluded that such hearings are dispositional and that the hearsay rules do not apply. See *In re Murphy* (1972), 15 Md.App. 434, 291 A.2d 867; *State* v. *Piche, supra; State* v. *Carmichael, supra.*

Clemons asserts that it was error to admit into evidence testimony by the investigating police officer regarding a confession by Clemons which would be inadmissible under the safeguards enunciated in *Lewis* v. *State* (1972), 259 Ind. 431, 288 N.E.2d 138. Clemons' argument is based, not on hearsay, but on denial of the Fifth Amendment right against self-incrimination. However, neither *Lewis* v. *State, supra,* involving the use of a juvenile confession in a subsequent criminal trial, nor the recent *Bridges* v. *State* (1973), 260 Ind. 651, 299 N.E.2d 616, involving use of a confession at a delinquency hearing, are applicable to a dispositional waiver hearing. Neither *Kent* v. *United States* nor *Summers* v. *State, supra,* expressly extend the Fifth Amendment right against self-incrimination to waiver hearings. Two other jurisdictions considering the admission of pre-hearing confessions at waiver hearings have refused to find such an admission reversible error. *State* v. *Piche* and *State ex rel. Juvenile Dept. of Marion Cty.* v. *Johnson, supra.* The juvenile's guilt or innocence is not at issue in a waiver hearing. None of the inadmissible confession evidence can be used against the juvenile in a later delinquency hearing or criminal trial. *Lewis* v. *State; Bridges* v. *State, supra.* If the juvenile's confession is considered at all by the

waiver hearing judge, it can only be considered as it relates to "the child's welfare and the best interests of the state."[11] The Fifth Amendment privilege against self-incrimination is inapplicable in the waiver hearing setting where the confession may not be viewed as inculpatory and where it may not be used in a later criminal or delinquency adjudication.[12]

Other testimony by the investigating police officer involved statements made to him by the victim of the burglary and an opinion by the officer that there was probable cause to believe Clemons committed the burglary.[13] Even if the rules of hearsay applied to the above testimony, any error in admission would be harmless. It is well-settled in Indiana that a trial judge is presumed to know the rules of evidence and that he is presumed to have considered only the evidence properly before the court. *King* v. *State* (1973), 155 Ind. App. 361, 292 N.E.2d 843; *City of Indianapolis* v. *Medenwald* (1973), 158 Ind. App. 128, 301 N.E.2d 795.

The final hearsay objection involved a probation report prepared by the Porter County Probation Department. The report contained information from the LaPorte County Juvenile Office. Although the Porter County Probation Officer testified at the waiver hearing and was available for cross-examination, Clemons contends that he was denied his right

11. The court in *State ex rel. Juvenile Dept. of Marion Cty.* v. *Johnson* (1972), 11 Or. App. 313, 501 P.2d 1011, 1015:
". . . We think a statement made by the boy shortly after he was taken into custody is relevant, not to establish whether or not he committed the acts alleged, though certainly it may have a tendency to do so, but to aid those qualified as experts to express an opinion concerning the ultimate question before the court—the determination of what it is in the best interest of the child and of the public. For the same reason it has value to the court in making its determination. . . ."

12. Unless the specific safeguards enunciated in *Lewis* v. *State* and *Bridges* v. *State, supra*, are observed, the juvenile's confession is clearly inadmissible at the delinquency hearing. We recognize that it may be fundamentally unfair for a juvenile court judge who has heard evidence of an invalid confession at a juvenile's waiver hearing to later adjudicate the issue of his delinquency for the same offense.

13. The record discloses that the complained of testimony regarding statements by the victim was stricken by the court negating this contention of error. Transcript at 57.

to confront witnesses. As in the case of a sentencing hearing, to hold that the hearsay rules apply to exclude such evidence as psychological reports, probation reports and social reports would seriously impair the juvenile judge's ability to determine whether waiver was in "the child's welfare and the best interests of the state."[14] Clemons is protected from consideration of erroneous reports by his right to access to such reports under *Kent* v. *United States, supra,* and by his right to present evidence of any circumstances that would entitle him to the benefits of the juvenile justice system under *Summers* v. *State, supra.* As the United States Supreme Court stated in *Kent* v. *United States, supra,* 383 U.S. at 563, 86 S.Ct. at 1058:

> ". . . [I]f the staff's submissions include materials which are susceptible to challenge or impeachment, it is precisely the role of counsel to 'denigrate' such matter. There is no irrebuttable presumption of accuracy attached to staff reports. If a decision on waiver is 'critically important' it is equally of 'critical importance' that the material submitted to the judge—which is protected by the statute only against 'indiscriminate' inspection—be subjected, within reasonable limits having regard to the theory of the Juvenile Court Act, to examination, criticism and refutation. While the Juvenile Court judge may, of course, receive *ex parte* analyses and recommendations from his staff, he may not, for purposes of a decision on waiver, receive and rely upon secret information, whether emanating from his staff or otherwise. The Juvenile Court is governed in this respect by the established principles which control courts and quasi-judicial agencies of the Government."

### III.

### Sufficiency of the Evidence

Although the hearsay rules of evidence do not necessarily apply to waiver hearings, we recognize that the record may be devoid of evidence pertinent to "the child's welfare and the

---

14. *Tumbleson* v. *Tumbleson* (1947), 117 Ind. App. 455, 73 N.E.2d 59 and *Ford* v. *State* (1952), 122 Ind. App. 315, 104 N.E.2d 406 cited by Clemons to support his contention that the juvenile judge could not consider probation office reports in making his waiver determination are distinguishable. They both involved adjudicatory hearings as opposed to the dispositional hearing involved in the case before this Court.

best interest of the state." *Atkins* v. *State, supra.* The juvenile judge in this case gave the following reasons for waiver:

"That the offense involved in this alleged delinquency hearing [has] specific prosecuting [sic] merit; also that the offense involved, if true, is a part of a reptative [repetitive] pattern and it is also the Court's finding that the Juvenile involved may very well be beyond rehabilitation upon Juvenile procedures and that it is in the best interests of the public welfare and public security that this Juvenile be waived over to stand trial as an adult offender.

"The Court specifically finds that there have been many previous offenses involving this Juvenile and that formal and informal probation in the past have been unable to rehabilitate said Juvenile.

"The Court further finds that said Juvenile has presented no evidence in this cause showing any circumstances that might entitle him to the benefits afforded him by the provisions of the Juvenile Act.

"IT IS THEREFORE, ORDERED, ADJUDGED AND DE-CREED by the Court that jurisdiction be waived and said Juvenile be held over for trial under the regular procedure of the Court which would have jurisdiction of the offense, if committed by an adult."

James Clemons was seventeen years old when the delinquency petition charging him with first degree burglary, transportation of stolen property across the state line, and possession of false selective service registration cards was filed in juvenile court. Clemons had an extensive record of previous trouble, including in part: vandalism—1966; theft—1969; assault and battery—1972; theft—1972; possession of stolen property—1972; vehicle taking—1972. Previous attempts to rehabilitate Clemons within the juvenile justice system included release to the custody of either his father or mother, who are divorced, probation and admittance to White's Institute. The probation officer's opinion was that neither probation nor release to Clemons' mother would be effective. He testified that Clemons had a history of running away and that he needed total supervision. The alternatives of the Boys' School or some other institution were explored,

and the probation officer testified that such alternatives might or might not be effective in the case of James Clemons. Finally, the probation officer indicated that upon more than one occasion, Clemons stated that he would not stay anywhere that the court desired to place him. Clemons presented no evidence to refute the testimony of the probation officer or the probation report. He presented no evidence of circumstances that would entitle him to the benefits of the juvenile justice system. The reasons for waiver stated by the juvenile judge and the record in support thereof adequately demonstrate that rehabilitation within the juvenile justice system had been unsuccessful. There is sufficient evidence to support the trial court's waiver judgment.

We affirm.

Hoffman, C.J. and Garrard, J., concur.

NOTE.—Reported at 317 N.E.2d 859.