

FILED

Aug 20 2018, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.M., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | August 20, 2018 <br><br> Court of Appeals Case No. 18A-JV-618 <br><br> Appeal from the Kosciusko Superior Court <br><br> The Honorable David C. Cates, Judge <br><br> Trial Court Cause No. 43D01-1708-JD-292 |

**Crone, Judge.**

## Case Summary

[1]     Fifteen-year-old A.M. was adjudicated a juvenile delinquent for conduct

amounting to class B misdemeanor battery if committed by an adult.  He was

placed on parental supervision/probation. He subsequently committed criminal acts and violated other probation rules, and the State moved to modify his placement. The trial court held a dispositional hearing and modified his placement to the Department of Correction ("DOC"). A.M. now appeals, claiming that the trial court abused its discretion by relying on insufficient information and by failing to explain its reasons for modifying his placement to the DOC. He also contends that he was denied his constitutional right to the effective assistance of counsel during the modification hearing. Finding that the trial court acted within its discretion in modifying A.M.'s placement and concluding that A.M. was not denied his right to the effective assistance of counsel, we affirm.

## Facts and Procedural History

[2] A.M., born in June 2002, is a teenager with a history of emotional and behavioral issues. At age eight, he began counseling to address his issues and was enrolled at an alternative school. In his seven years of attendance at the school, he was frequently truant and/or tardy and had multiple suspensions for fighting, "explosive rage," property destruction, e.g., throwing chairs and flipping desks, and violent acts against school personnel. Appellant's App. Vol. 2 at 65. At age ten, he had three true findings for acts amounting to class D felony battery with bodily injury if committed by an adult. He was put in parental placement under the supervision of the probation department. In the ensuing years, he had several suspensions from school and several referrals to the juvenile court, which were dismissed.

In 2017, A.M. beat up a fellow teenager at the fairgrounds, and the victim required emergency room treatment for cuts on his face. This incident resulted in a true finding for acts amounting to class B misdemeanor disorderly conduct if committed by an adult. Again, A.M. was placed on supervised probation in his mother and stepfather's home. He was ordered to avoid all criminal activity, avoid possession and use of controlled substances, alcohol, and tobacco, attend school regularly, obey school rules and teachers, study for one hour per school night, obey his parents, abide by an 8:00 p.m. curfew, assist in meal preparation and clean up at home, prepare a list of long- and short-term goals, participate in mental health services and anger management counseling, submit a written apology to his victim, complete community service, and avoid all direct and indirect contact with a certain named individual. *Id*. at 77.

Within two months of the supervised probation order, A.M. was a suspect in a burglary involving the residence of one of his classmates. Shortly thereafter, he was arrested for acts amounting to class B misdemeanor battery if committed by an adult, stemming from a physical altercation at the bus stop. He was suspected of alcohol use, expelled from his alternative school, and wanted by police for theft of a firearm. These developments prompted the State to seek a modification of A.M.'s placement to the DOC. At the hearing on the motion to modify, the parties stipulated to the redaction of the burglary- and alcohol-related allegations. A.M. admitted to the remaining allegations in the motion to modify, which included the battery allegation as well as the violation of several rules, including those related to his conduct and attendance at school,

conduct at home, curfew, participation in counseling, and the no-contact order. The parties also stipulated to the admission of a police report in which A.M. admitted to stealing a handgun. The trial court issued a dispositional order finding that A.M. had committed criminal acts and violated several of the rules of his placement. The court modified his placement to the juvenile division of the DOC. A.M. now appeals the trial court's order. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The trial court acted within its discretion in modifying A.M.'s placement.

[5] A.M. asserts that the trial court abused its discretion in modifying his placement. The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). We review the trial court's dispositions and modification thereof for an abuse of discretion, which occurs if its decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id.*; *see also K.A. v. State*, 775 N.E.2d 382, 386 (Ind. Ct. App. 2002) (applying abuse of discretion standard where juvenile challenged modification of placement to DOC following her violation of terms of suspended commitment), *trans. denied*. In determining whether a trial court has

abused its discretion, we neither reweigh evidence nor judge witness credibility. *Ripps v. State*, 968 N.E.2d 323, 326 (Ind. Ct. App. 2014).

[6] The crux of A.M.'s argument is that the trial court modified his placement to the harshest option – the DOC – without sufficient information concerning his circumstances and without adequately explaining its reasons for doing so. Juvenile court proceedings are civil, not criminal, in nature. *T.K. v. State*, 899 N.E.2d 686, 687-88 (Ind. Ct. App. 2009). "[T]he goal of the juvenile process is rehabilitation so that the youth will not become a criminal as an adult." *Id*. As such, juvenile courts have a variety of placement choices. *Id*. Indiana Code Section 31-37-18-6 reads,

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[7] Indiana Code Section 31-37-18-9(a)(5) requires the trial court to state its reasons for the disposition chosen. This involves the trial court's issuance of written findings and conclusions concerning the child's care, treatment, rehabilitation, or placement; parental participation in the plan; efforts made to prevent the child's removal from the parent; family services offered; and the court's reasons for its disposition. Ind. Code § 31-37-18-9(a)(1)-(5).

[8] With respect to the sufficiency of the information to support the trial court's decision, we note that the trial court specifically incorporated by reference all the pleadings and papers of the service providers and probation department. Appellant's App. Vol. 2 at 137. These documents include probation department reports and correspondence, A.M.'s lengthy school disciplinary record, his juvenile criminal history, including victim incident reports, his records from the counseling center, and the police report in which he admitted to having recently stolen a handgun. In short, there is no dearth of information in the record to support the trial court's modification order. A.M.'s claims to the contrary amount to invitations to reweigh evidence, which we may not do. *See Ripps*, 968 N.E.2d at 326.

[9] A.M. also claims that the trial court committed reversible error in failing to adequately explain its reasons for modifying his placement. We disagree. The trial court specified several reasons in its dispositional order, including that A.M. committed battery while in his current placement, left home without

permission, made verbal threats to his family, was expelled from school, failed to abide by the court-ordered curfew, failed to comply with counseling services, and continued to have contact with the named individual with whom all contact was prohibited. Appellant's App. Vol. 2 at 134, 136-37. The court concluded, in relevant part,

> That by reason of the foregoing facts the Court finds respondent child has not behaved well, is effectively beyond the control of his parent(s).

> The Court further finds that reasonable efforts were made to prevent the child's removal from the child's parent(s) by placing subject on formal supervision on October 30, 2017, and [he] has failed to abide by and comply with Rules of Supervision set forth by the Court on that date, and as more fully outlined in the Modification Report and Request for Modification of Dispositional Decree filed herein.

> The child needs further family preservation services of care, treatment, and rehabilitation that the parent cannot offer at this time. The removal of the child was authorized and necessary as remaining in the home would be contrary to the best interests and safety and welfare of the child. Reasonable efforts to prevent the removal of the child from his home have been made and as set forth in the pleadings and papers of the Probation and or all other service providers filed herein are incorporated by reference. It is in the best interests and safety and welfare of the child to remain outside of the parent's custody.

> This disposition is consistent with the safety and the best interest of the child and is the least restrictive and most appropriate setting available close to the parent's home, least interferes with the family autonomy, is least disruptive of family life, and

imposes the least restraint on the freedom of the child and the child's parents.

*Id.* at 137.

[10] The record indicates that A.M.'s expulsion from his alternative school was a significant factor in evaluating his best interest. Probation officer reports and testimony show that due to excessive absences, tardies, suspensions, and eventual expulsion, A.M. was receiving only three to four hours of education each week and that his best interest would be to attend school while in the DOC. *See* Tr. Vol. 2 at 6. The trial court expressed its concern not only about A.M.'s continued rule-breaking and criminal conduct but also about the impact on his education and his prospects for resuming a full-time education, a critical piece of his rehabilitation:

> [A.M.], back at the end of October of last year you were here for disposition and you were placed upon supervision with certain rules. One of those basic rules was to quit taking actions which would be crimes if committed by an adult. It looks like you chose not to abide by that rule. You were to abide by the rules of your parent. You chose not to abide by that rule. You're not getting an education. You're committing acts which would be crimes, felonies, major crimes. I'm going to adopt the recommendation from my Probation Department and direct that your wardship be placed with the Indiana Department of Corrections, Juvenile Division, for completion of that program. How long you are there is largely determined by your attitude and the effort you place to complete that program. It is my hope that you will be successful in that program, and that you take a good attitude to that.

*Id*. at 7-8.

[11]     Loss of parental control was also a critical factor in the trial court's decision. For the preceding eight years, A.M. was placed in less restrictive placements with parental supervision. These simply did not work. He continued to commit violent acts both in and out of school. He demonstrated no respect for the rules of his supervised placement, disregarded his court-imposed curfew, and disobeyed his mother and stepfather. His family relationships declined to the point where he left home for extended periods and threatened his family when they reported him to probation officers. These circumstances do not bode well concerning A.M.'s prospects for success with less restrictive options such as electronic monitoring or in-home detention.

[12]     A.M. argues that the trial court should have conducted a more thorough inquiry into various issues such as the effect of his emotional disability on his conduct and his prospects for successful rehabilitation through less restrictive placement options. The court considered the school's expulsion report, which stated that the expulsion committee found no connection between A.M.'s conduct and his emotional disability. Moreover, the counseling center reports indicate that A.M. made little to no progress during his supervised placement in this case. The probation department found him to be a danger to himself and others and concluded that the DOC would provide him with the best chance of receiving an education and the services he needs to reform. Simply put, A.M.'s lengthy record of criminal and behavioral issues spans several years, and time after time, he *has* been afforded less restrictive placements and has failed to

respond positively.  The trial court found that given the loss of parental control and A.M.'s expulsion from school, these failed placement options are no longer viable.  The trial court acted within its discretion in modifying A.M.'s placement to the DOC.[1]

## Section 2 – A.M. was not denied his constitutional right to effective assistance of counsel.

[13]  Finally, A.M. maintains that he was denied his constitutional right to the effective assistance of counsel at the disposition modification hearing.  Raising ineffectiveness of counsel on direct appeal is permissible, but in doing so, the defendant proceeds without the benefit of a developed record and will be barred by res judicata from raising the issue in subsequent proceedings.  *Brewington v. State*, 7 N.E.3d 946, 978 (Ind. 2014), *cert. denied* (2015).

[14]  The Sixth Amendment to the U.S. Constitution and Article 1, Section 13 of the Indiana Constitution guarantee a criminal defendant the right to counsel.  The Supreme Court of the United States "has recognized that 'the right to counsel is the right to the effective assistance of counsel.'"  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)).  The parties do not dispute that juveniles also have a constitutional right to counsel.  *See also* Ind. Code §§ 31-32-2-2, 31-32-4-1 (expressing juvenile's statutory right to counsel).  However, the parties disagree concerning

---

[1] In his reply brief, A.M. claims that the trial court erred in failing to advise him of his right to appeal the modification order.  Because he did not raise the issue in his primary brief, it is waived.  *See French v. State*, 778 N.E.2d 816, 825-26 (Ind. 2002) (issues raised for the first time in appellant's reply brief are waived).

the appropriate standard to be applied to an ineffective assistance claim in the context of juvenile delinquency disposition modification proceedings. A.M. maintains that his attorney's performance must be assessed according to the two-pronged test found in *Strickland*. 466 U.S. at 687. The *Strickland* test, rooted in the Sixth Amendment, requires the defendant to demonstrate both deficient performance and prejudice resulting from it. *Id.*; *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). A.M. relies on *S.T. v. State*, 764 N.E.2d 632, 634-35 (Ind. 2002), which applied the *Strickland* test in evaluating counsel's performance during a juvenile delinquency adjudication. The State relies on *In re Gault*, 387 U.S. 1, 35-41 (1967), where the United States Supreme Court held that a juvenile has a right to counsel during delinquency proceedings and that this right is rooted in the Due Process Clause of the Fourteenth Amendment rather than in the Sixth Amendment. There is a lack of clarity and consistency among and even within jurisdictions concerning the source and applicability of the constitutional right to counsel enjoyed by juveniles in delinquency proceedings.[2]

---

[2] *See, e.g.*, *People v. Austin M.*, 975 N.E.2d 22, 39 (Ill. 2012) (holding that minors in delinquency proceedings have right to a *defense* attorney, and in particular, the effective assistance of counsel as recognized in *Gault*); *State in Interest of W.B.*, 206 So. 3d 974, 985 (La. Ct. App. 2016) (applying two-pronged *Strickland* test in assessing counsel's performance during juvenile delinquency adjudication hearing); *State ex rel. K.M.T.*, 18 So. 3d 183, 192 (La. Ct. App. 2009) (noting *Gault*'s distinction between adjudication phase and disposition phase in juvenile proceedings and then applying *Strickland*'s two-pronged test and concluding that minor failed to establish ineffective assistance of counsel during either phase); *In re Parris W.*, 770 A.2d 202, 206-07 (Md. Ct. Spec. App. 2001) (citing *Gault* concerning source of juvenile's right to counsel as due process clause and applying *Strickland*'s two-pronged test for assessing counsel's performance); *In re C.S.*, 874 N.E.2d 1177, 1187-88 (Ohio 2007) (adopting *Gault* analysis, finding that juvenile's right to counsel arises from due process); *In re C.R.*, No. 13CA3411, 2014 WL 1875787, at *5 (Ohio Ct. App. Apr. 30, 2014) (applying *Strickland*'s two-pronged test to ineffective assistance claim in juvenile proceeding to determine juvenile's

[15]     Under a due process analysis, the reviewing court applies a less stringent standard in reviewing counsel's performance: "If counsel appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by rigorous standards." *Jordan v. State*, 60 N.E.3d 1062, 1068 (Ind. Ct. App. 2016) (quoting *Childers v. State*, 656 N.E.2d 514, 517 (Ind. Ct. App. 1995), *trans. denied* (1996)). This less stringent standard has been applied to assess counsel's performance in post-conviction proceedings, *Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989), and in probation revocation proceedings, *Jordan*, 60 N.E.3d at 1069.

[16]     Indiana courts have not squarely addressed whether the two-pronged *Strickland* test or the due process test is the proper test to be used in analyzing the effectiveness of juvenile's counsel during the various phases of delinquency proceedings, and we encourage our supreme court to provide guidance in this area. A.M. correctly observes that the *S.T.* court applied the *Strickland* test in assessing counsel's performance during his juvenile delinquency adjudication. 764 N.E.2d at 634-35. However, there is no indication that the court considered or mandated that standard for pre- or post-adjudicative phases. *Id*.

offender classification); *In re K.J.O.*, 27 S.W.3d 340, 342-43 (Tex. Ct. App. 2000) (concluding that although juvenile delinquency trial is civil proceeding, it is quasi-criminal, thus guaranteeing juvenile the right to effective assistance of counsel per *Strickland*); and *In Interest of LDO*, 858 P.2d 553, 556 (Wyo. 1993) (applying *Strickland*'s two-pronged analysis for evaluating counsel's performance during juvenile delinquency adjudication hearing). Essentially, it appears that the courts that are applying *Gault*'s holding that a juvenile has a due process right to counsel during delinquency proceedings per the Fifth and Fourteenth Amendments are often applying a *Strickland* analysis, rooted in the Sixth Amendment, when analyzing the effectiveness of the juvenile's counsel during the adjudication phase, or in the case of *C.R.*, to the juvenile offender classification phase. *See C.R.*, 2014 WL 1875787, at *5. Whether the various courts have intentionally considered and rejected an alternate analysis or simply defaulted to a *Strickland* analysis is not apparent.

S.T.'s ineffective assistance claim pertained to counsel's performance during the delinquency adjudication phase, not the pre-adjudicative or post-adjudicative phases. *Id*. at 634. The *Gault* court noted a distinction between the various phases of juvenile proceedings:

> We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. We do not even consider the entire process relating to juvenile "delinquents." For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process. We consider only the problems presented to us by this case. These relate to the proceedings by which a determination is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution. As to these proceedings, there appears to be little current dissent from the proposition that the Due Process Clause has a role to play. The problem is to ascertain the precise impact of the due process requirement upon such proceedings.

387 U.S. at 13-14 (citation omitted).

[17] We believe that these proceedings – not for the delinquency adjudication itself but for a modification of the disposition – are most akin to probation revocation proceedings, which are quasi-civil in nature and involve the factual determination that the probationer has violated a term of his probation followed by the entry of a disposition modification or revocation. *See Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008) (in probation revocation proceedings, trial court first determines whether a violation occurred and then determines whether the

violation warrants revocation). As such, much like in the case of a probationer, counsel's appearance for and representation of a juvenile in a procedurally fair setting resulting in judgment would make it unnecessary to judge his performance by *Strickland*'s more rigorous standards. *See Jordan*, 60 N.E.3d at 1068.

[18] A.M. claims that counsel did nothing to promote his interests, and thus he essentially received *no* assistance from counsel. We disagree. The record shows that counsel negotiated a stipulation with the State whereby three of the allegations in support of modification were redacted; these allegations were that A.M. possessed an alcoholic beverage, consumed an alcoholic beverage on a school bus, and committed burglary. These alleged acts were not only violations of A.M.'s supervised probation rules but also criminal conduct that could have resulted in additional true findings. As such, the negotiation of the stipulation was neither insignificant nor against A.M.'s best interest. In this respect, we note that even under the *Strickland* test, this evidence supports a finding of effective, not deficient, performance. To the extent that A.M. focuses on the result, "the harshest disposition available," as evidence of ineffective assistance, this argument improperly presupposes that any client who ultimately receives the maximum sentence or harshest penalty otherwise allowed by law necessarily received ineffective assistance of counsel. Appellant's Reply Br. at 13. As discussed, it was A.M.'s continued failure to adhere to the law and the rules of his placement that caused his placement to be modified to the most restrictive option.

[19]     A.M. also cites counsel's closing remarks as evidence that counsel essentially had given up and failed to advocate for his best interest:

> [Counsel]:  I am befuddled by the actions of [A.M.].  I think he's a good kid. I think he's got a bright future ahead of him. He's smart, has some real opportunities, but the path he's going down is leading him to prison and he's just going to end up wallowing away there, probably spend most of his life there. You don't break into people's houses, you don't steal guns, don't follow the rules, get kicked out of school. You don't get an education and that's going to end up being his downfall. I think except for being kicked out of [school], he could have had an opportunity here. He could have been on home detention and shown everybody that he could do right. Instead he's going to go to the DOC, go to Logansport for an evaluation, do his six months, eight months or a year, as long as he does right, and hopefully will come back and have learned a lesson. I have a lot of hope for [A.M.]. I hope he understands that what's going to happen here is not a punishment but rather a chance to get a leg up in life and to try to do the right thing. I hope he does good, and when he comes back he can really grow and be a good kid.

Tr. Vol. 2 at 6-7.

[20]     Counsel's closing remarks do not amount to a violation of A.M.'s right to the effective assistance of counsel, whether under a due process analysis or a *Strickland* analysis.  Under a due process analysis, counsel appeared at a procedurally fair modification hearing and negotiated a redaction of three

allegations against A.M., all involving criminal conduct.[3] Based on the foregoing, we conclude that A.M. has failed to meet his burden of establishing that he was denied his constitutional right to counsel during his disposition modification proceedings. Consequently, we affirm.

Affirmed.

Bailey, J., and Brown, J., concur.

---

[3] Under *Strickland*, counsel's remarks do not amount to deficient performance, especially when considered together with the negotiated redactions. Nor does the mere fact that A.M. received the harshest available placement amount to a showing of prejudice under *Strickland*. *See Strickland*, 466 U.S. at 694 (prejudice prong necessitates showing of reasonable probability that but for counsel's deficient performance, the outcome would have been different).