## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 14 2018, 10:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

K. T.,
*Appellant-Respondent,*

v.

State of Indiana,
*Appellee-Petitioner.*

December 14, 2018

Court of Appeals Case No.
18A-JV-1333

Appeal from the Hendricks
Superior Court

The Honorable Karen M. Love,
Judge

Trial Court Cause No.
32D03-1803-JD-52

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, K.T., appeals the juvenile court's dispositional order placing him with the Department of Correction (DOC) following his admission to acts which would have constituted resisting law enforcement, a Class A misdemeanor, Ind. Code § 35-44.1-3-1(a)(3); and battery, a Class A misdemeanor, I.C. § 35-42-2-1(c)(1),[1] had they been committed by an adult.

We affirm.

# ISSUE

K.T. presents one issue on appeal, which we restate as: Whether the juvenile court abused its discretion when it placed him with the DOC.

# STATEMENT OF FACTS

K.T., who was born in 2002, was sexually abused by a relative as a toddler and by one of his biological mother's sexual partners at age seven. K.T. was first exposed to pornography beginning at age five. K.T. was also physically abused by several of his biological mother's sexual partners and had witnessed domestic abuse. As a result of his childhood trauma, K.T. exhibited a preoccupation with sexual matters from an early age. K.T. and his younger

---

[1] This subsection, cited by the juvenile court in its dispositional order, pertains to Class B misdemeanor battery. The parties do not contest that K.T. admitted to acts which would have constituted Class A misdemeanor battery if committed by an adult.

brother, A.T., were found to be children in need of services (CHINS) and were removed from their mother's care in 2009. K.T. and A.T. were initially placed with their great-grandmother, but in July of 2010, both were placed in a pre-adoptive home, where the pre-adoptive couple's biological, minor daughter, H.T, also lived. K.T. and A.T. were eventually adopted into the home in 2011.

[5] K.T.'s behavior in his adoptive home was troubled. K.T. engaged in excessive talk of a sexual nature, inappropriately sexually touched peers, and regularly viewed pornography. K.T. subjected A.T. to anal sex on three separate occasions. K.T. also subjected H.T. to anal sex on three occasions, and he instructed A.T. to subject H.T. to anal sex. At times, K.T. masturbated to the point of self-injury. K.T. also displayed aggressive behaviors such as pushing A.T. down the stairs and having the family dog attack his siblings. K.T. stole from his siblings and attempted to set the house on fire. K.T. made false allegations of sexual abuse against his adoptive father and reported having sexual fantasies about him.

[6] K.T. has been diagnosed with posttraumatic stress disorder and conduct disorder, among other diagnoses. Beginning in 2009, K.T. began receiving outpatient therapy. From 2012 through 2014, K.T. received outpatient psychiatric, therapeutic, and wrap-around services. K.T. had an inpatient stay at Riley Hospital in August of 2013 as a result of behaviors that indicated that he was a danger to himself and others. K.T. threatened to commit suicide on at least one occasion. K.T.'s adoptive parents reported that K.T. struggled to regularly demonstrate any changes outside of the therapeutic environment. For

instance, even after receiving treatment for his sexually maladaptive behavior directed toward H.T., K.T. continued to rub up against her, causing her to be in fear of him.

[7]     K.T. was placed with his biological mother for four months starting in December of 2013. This placement resulted in an escalation of K.T.'s sexual behaviors: K.T. attempted to kiss his mother and fondle her breasts, reported having sexual fantasies about her, and attempted to observe his mother in the shower. K.T. was hospitalized for several days and subsequently went to his first residential placement at Oaklawn in March of 2014 to address his constant sexual preoccupation and his fear that he would injure someone.

[8]     While at Oaklawn, K.T. received treatment for his sexually maladaptive behavior. K.T. had behavioral issues there and was discharged from Oaklawn unsuccessfully. On January 15, 2015, K.T. was placed in residential treatment at Resolute. K.T.'s treatment at Resolute was designed to address his sexual behaviors. While at Resolute, K.T. flashed his peers and staff and was caught in a sex act with a peer. K.T. did not successfully complete his treatment at Resolute. At that time, K.T.'s adoptive parents wished to have him return to their home, but they expressed grave concern about the safety of their other children and the children in their neighborhood who might come into contact with K.T. On July 29, 2016, K.T. went to his third residential treatment facility, Gibault, where his treatment plan included services for his sexually maladaptive behaviors. While at Gibault, K.T. was observed touching a peer's genitals and received at least fifteen reports for conduct including self-harm and

being a danger to others. K.T. was discharged from Gibault in December 2017, without having successfully completed his treatment. K.T.'s family installed security cameras inside their home in anticipation of K.T.'s return.

[9] K.T. had been home for approximately three months, when on March 17, 2017, he disabled the security cameras inside his home and entered H.T.'s room while she was sleeping. K.T. pulled at the waistband of H.T.'s pants, causing her to awaken and scream. K.T. fled from the home, and his parents alerted the authorities. An officer searching for K.T. spotted him and ordered him to stop. K.T. fled but was eventually stopped by the officer. K.T. was detained at the Hamilton County Juvenile Detention Facility. On March 19, 2018, the State filed its Petition, alleging that K.T. had committed acts that, if committed by an adult, would have constituted resisting law enforcement and sexual battery. On April 25, 2018, K.T. admitted that he had committed acts that would have constituted resisting law enforcement and battery, as a lesser-included offense of sexual battery, had they been committed by an adult.

[10] After the events of March 17, 2018, K.T.'s parents were no longer willing to have him return to their home out of concern for their other children. Prior to K.T.'s dispositional hearing, the Hendricks County Probation Department (HCPD) contacted eleven in-state and two out-of-state residential treatment facilities seeking a placement for K.T. None accepted him. The HCPD recommended placement with the DOC due to K.T.'s failure to benefit from community-based services. As a CHINS who was also alleged to be delinquent, K.T. was considered a dual status youth. On April 10, 2018, K.T.'s

dual status assessment team prepared a dispositional report in which the nine-member team, which included K.T.'s guardian ad litem, representatives from DCS, his adoptive parents, and service providers, unanimously concluded that K.T. should be placed with the DOC due to his previous failed placements.

[11]     On April 25, 2018, and May 21, 2018, the juvenile court held dispositional hearings. Ashley Starling (Starling) of the HCPD testified that, in her opinion, it would be "very, very dangerous" to place K.T. in the community due to his history and the potential that he could harm another child. (Transcript Vol. II, p. 41-42). Starling had been advised by DCS that K.T. could not be placed in a foster home or a group home until he successfully completed a sexually maladaptive behavior treatment program. K.T. could not complete that type of treatment in a foster home. Starling had verified that DOC provided such treatment. Starling had located no other placement option for K.T. other than the DOC. Courtney Crowe (Crowe) of DCS provided her professional opinion that, because K.T. had failed three residential placements and had not successfully completed treatment for his sexually maladaptive behaviors, no foster care home would be willing to take him. On May 22, 2018, the juvenile court entered its dispositional order in which it made the following relevant findings:

> 22. Despite the treatment [K.T.] has received, he continues to be a risk for sexually maladaptive behavior.
>
> 23. Extensive treatment has been given to [K.T.] without success. [K.T.] needs to successfully complete [the DOC's] sexually

maladaptive treatment program and then needs a significant period of supervision by Probation to be sure he can be safely placed in the community.

24. Unless [K.T.] receives the treatment he needs, he is at significant risk to reoffend as a juvenile and as an adult.

(Appellant's App. Vol. II, p. 118). The juvenile court specifically found Crowe's testimony to be credible that K.T. could not be placed in a group home or foster care until he successfully completed sexually maladaptive behavior treatment. The juvenile court awarded wardship of K.T. to the DOC for an indeterminate period and directed K.T. to successfully complete a sexually maladaptive behavior treatment program as well as a psychological evaluation to determine his other treatment needs.

[12] K.T. now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[13] K.T. appeals from the trial court's dispositional order placing him with the DOC. "The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition." *A.M. v. State*, 109 N.E.3d 1034, 1037 (Ind. Ct. App. 2018). We review a juvenile court's dispositional order for an abuse of discretion, which occurs if its decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn

therefrom. *Id.* In addition, when determining whether a juvenile court abused its discretion, we neither reweigh the evidence nor judge witness credibility. *Id.*

[14] Here, K.T. had deeply-seated sexually maladaptive behavior resulting from his own history of being abused. It was Starling's opinion that K.T. was a danger to the community. K.T. had received out-patient therapy, wraparound services, and had been hospitalized for acute incidents. Prior to committing the instant delinquent acts, K.T. had been placed in residential treatment for almost four years at three different facilities for his sexually maladaptive behaviors but was unsuccessful at completing treatment. By the time of his dispositional hearing, no residential treatment facility would accept K.T. for further treatment, and the DOC was the only place where he could access the treatment that the HCPD, DCS, and K.T.'s dual status team all concluded that he needed. Given this evidence, the juvenile court's decision to place him with the DOC was not clearly against the logic and effect of the facts and circumstances before it. *Id.*

[15] K.T. argues that the juvenile court should have treated him as a CHINS and that DCS should have inquired about the possibility of foster care as an alternate disposition. However, K.T.'s contentions ignore that the juvenile court received the recommendation of the dual status team, which considered what was in K.T.'s best interests as both a CHINS and a juvenile who had been alleged to have committed a delinquent act. That team unanimously recommended that K.T. be placed with the DOC. In addition, the evidence before the juvenile court was that foster care was not an option for K.T. until he successfully completed sexually maladaptive behavior treatment. In its

dispositional order, the juvenile court specifically credited that evidence, which we will not reweigh on appeal. *A.M.*, 109 N.E.3d at 1037. Finding no abuse of the juvenile court's discretion, we affirm its dispositional order.

## CONCLUSION

[16] Based on the foregoing, we conclude that the juvenile court acted within its discretion when it placed K.T. with the DOC.

[17] Affirmed.

[18] Kirsch, J. and Robb, J. concur