## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 27 2019, 7:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melinda K. Jackman-Hanlin
Greencastle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.C.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner* | June 27, 2019<br><br>Court of Appeals Case No. 18A-JV-3059<br><br>Appeal from the Hendricks Superior Court<br><br>The Honorable Karen M. Love, Judge<br><br>Trial Court Cause No. 32D03-1805-JD-111 |

**Crone, Judge.**

# Case Summary

J.C. challenges his juvenile delinquency adjudication for resisting law enforcement, a class A misdemeanor, and disorderly conduct, a class B misdemeanor, if committed by an adult. We restate the dispositive issue as whether the evidence is sufficient to support the adjudication. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

The facts most favorable to the delinquency adjudication are as follows. On May 3, 2018, sixteen-year-old J.C. was a sophomore at Avon High School. On that date, Avon Police Department Lieutenant David Margason and Officer Jacob Boggess were working off-duty as security at the school. During lunch period, J.C.'s girlfriend broke up with him. J.C. followed her out of the cafeteria and into a hallway, and had her pinned up against the wall trying to talk to her. Each time she tried to walk away, J.C. pulled her back. Lieutenant Margason observed this interaction and noticed that the female was "visibly distraught and attempting to leave the situation," but was being prevented from doing so by J.C. Tr. Vol. 2 at 66. As Lieutenant Margason approached, J.C. aggressively threw a sweatshirt on the ground, yelled obscenities, and "began to storm away in the opposite direction[.]" *Id*. at 67. Believing J.C. to be a potential security risk to students and staff, Lieutenant Margason instructed J.C. to "stop" and "come here." *Id*. J.C. disregarded Lieutenant Margason's commands and continued to walk away and to loudly yell obscenities.

[3]     Officer Boggess, who had been just around the corner, saw J.C. walking quickly away from Lieutenant Margason and ignoring commands to stop. Officer Boggess tried to catch up with J.C. and also gave him multiple verbal commands to stop, which J.C. ignored. Officer Boggess finally had to jog to catch up with J.C. and grabbed J.C.'s wrist to try to get him to stop and calm down. J.C. turned around in a "very aggressive" manner and pushed Officer Boggess away. *Id*. at 31. When Officer Boggess tried again to grab J.C., J.C. began "to fight[,]" and he and the officer got into a "wrestling match." *Id*. at 69, 31. During the struggle in the hallway, Officer Boggess sustained injuries to his hand and elbow. The two officers were eventually able to get handcuffs on J.C. and escort him to the school office. As they walked to the office, J.C. continued to "pull away … scream, [and] create a disturbance." *Id*. at 72.

[4]     Once in the office, J.C. briefly sat down but then quickly became agitated again. He stood up and continued to yell and scream obscenities. The officers instructed him to sit back down, but J.C. refused. As the officers tried to place J.C. back down in the chair, J.C., who is a "very strong individual," actively resisted. *Id.* at 37. Lieutenant Margason suffered a severely sprained knee during this struggle. At some point while in the office, J.C. finally communicated to the officers that he wanted to see "Mr. Bischof." *Id*. at 60.

[5]     The record indicates that J.C. had been diagnosed with attention deficit disorder, attention deficit hyperactivity disorder, and oppositional defiant disorder, and he has an individualized education plan ("IEP") with Avon Community School Corporation identifying him as a student eligible for special

education services based upon emotional disability. Pursuant to the IEP, J.C. has a "behavior plan" to help him reach "behavior goals" and to target his verbal and physical aggression. Appellant's Amended App. Vol. 2 at 16. Among other things, J.C. has a "Hot Pass" that he can "utilize at his request" when he is feeling overwhelmed so that he can "leave [a] space and go to his teacher of record … Mr. Bischof." *Id.*; Tr. Vol. 2 at 93. If J.C. is in a school hallway when feeling overwhelmed, he simply needs to identify that he is going to see Mr. Bischof and he "should be able to just go." Tr. Vol. 2 at 93.

[6] The State filed a delinquency petition alleging that J.C. committed conduct which, if committed by an adult, amounted to level 6 felony battery on a public safety official, class A misdemeanor resisting law enforcement, and class B misdemeanor disorderly conduct. Following a factfinding hearing, the juvenile court entered true findings on the allegations of resisting law enforcement and disorderly conduct but did not enter a true finding on the battery allegation. Although the State requested a disposition of nine months of probation and payment of fees, the court declined to enter a formal disposition, assessing no "penalty at all. No costs[,] nothing." Appellant's App. Vol. 2 at 9; Tr. Vol. 2 at 122. This appeal ensued.

## Discussion and Decision

[7] Although J.C. does not precisely articulate the basis for his appeal, we agree with the State's interpretation and restate his claim as a challenge to the sufficiency of the evidence supporting the juvenile court's true findings of delinquency. Our standard of review is well settled:

> We neither reweigh the evidence nor judge the credibility of witnesses. The State must prove beyond a reasonable doubt that the juvenile committed the charged offense. We examine only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. We will affirm if there exists substantive evidence of probative value to establish every material element of the offense. Further, it is the function of the trier of fact to resolve conflicts in testimony and to determine the weight of the evidence and the credibility of the witnesses.

*T.G. v. State*, 3 N.E.3d 19, 23 (Ind. Ct. App. 2014) (citation omitted), *trans. denied.*

[8] Regarding the true finding of resisting law enforcement, the State was required to prove that J.C. knowingly and intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of his duties. *See* Ind. Code § 35-44.1-3-1(a)(1). Regarding the true finding of disorderly conduct, the State was required to prove that J.C. knowingly or intentionally engaged in fighting or in tumultuous conduct. *See* Ind. Code § 35-45-1-3(a)(1). Here, the State presented ample evidence that J.C. knowingly and intentionally engaged in conduct that constituted forcible resistance against Lieutenant Margason and Officer Boggess while they were lawfully engaged in the execution of their duties, as well as knowingly or intentionally engaged in fighting or in tumultuous conduct in the school hallway and office.

[9]     Rather than specifically challenge the sufficiency of the evidence on any of the elements of these offenses, J.C. instead asserts that the officers failed to follow the protocol in his IEP, and that such failure caused (and should excuse) any conduct that would otherwise constitute criminal offenses. We find this argument problematic for several reasons. First, there is conflicting evidence as to whether the officers failed to follow any protocol outlined in J.C.'s IEP. Both officers testified that at no point during the interaction in the hallway or the initial interaction in the office did J.C. communicate to them that he was requesting a "Hot Pass" or that he was trying to go see Mr. Bischof. Officer Boggess admitted that he was unaware that J.C. suffered from emotional disability, and it is clear from our review of the record that Officer Boggess may well not have tried to grab or stop J.C. had J.C. communicated properly with the officers.

[10]    Moreover, even assuming that the officers failed to follow IEP protocol, J.C. cites no legal authority, and we are unaware of any, that would support his position that a school official's failure to follow IEP protocol constitutes a legal excuse for conduct that would otherwise constitute criminal offenses. Although the existence of the IEP and a review of the protocol are perhaps relevant to contextualize a student's behavior and the appropriate or desired adult response to that behavior, neither the mere existence of an IEP nor an official's alleged failure to follow the outlined protocol would constitute a legal defense for criminal conduct.

[11] We understand that J.C. believes that the Avon Community School Corporation failed him in this instance, and we do not disagree with his general statement that public school systems should "take steps to train their school resource officers on the appropriate way to respond to children with emotional disabilities." Appellant's Br. at 15. Nevertheless, an appeal of the current juvenile delinquency adjudication is not the proper forum to address these concerns. Sufficient evidence supports the juvenile court's true findings, and therefore we affirm the court's delinquency adjudication.[1]

[12] Affirmed.

Bradford, J., and Tavitas, J., concur.

---

[1] We commend the juvenile court for its eminently reasonable decision to enter true findings of delinquency but to decline to enter a formal disposition based on the circumstances presented. *See A.M. v. State*, 109 N.E.3d 1034, 1037 (Ind. Ct. App. 2018) ("The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition.").