

FILED
Nov 12 2019, 10:54 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Indiana Supreme Court

Supreme Court Case No. 19S-JV-603

## A.M.,
*Appellant (Defendant),*

–v–

## State of Indiana,
*Appellee (Plaintiff).*

Argued: February 28, 2019 | Decided: November 12, 2019

Appeal from the Kosciusko Superior Court 1,
No. 43D01-1708-JD-292
The Honorable David C. Cates, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-JV-618

**Opinion by Justice Goff**

Chief Justice Rush and Justices David and Massa concur.
Justice Slaughter concurs in judgment with separate opinion.

**Goff, Justice.**

More than half a century ago, the Supreme Court of the United States avowed that a child's right to counsel is neither "a formality" nor "a grudging gesture to a ritualistic requirement," but rather "the essence of justice." *Kent v. United States*, 383 U.S. 541, 561 (1966). Since then the settled law has been that children enjoy a constitutional due process right to the effective assistance of counsel during juvenile delinquency proceedings.

The law remains unsettled, however, on the standard to evaluate claims from children alleging ineffective assistance of counsel. Here, A.M. asserts that his attorney rendered him ineffective assistance during a disposition-modification hearing. Reflecting the uncertainty in the law, A.M. and the State offer two competing standards for deciding the claim—one founded in the Sixth Amendment's right to counsel for a criminal proceeding and one founded in the Fourteenth Amendment's due process clause.

We hold today that a due process standard governs a child's claim that he received ineffective assistance in a disposition-modification hearing during his delinquency proceedings. In assessing these claims, we consider counsel's overall performance and determine whether that performance ensured the child received a fundamentally fair hearing resulting in a disposition serving his best interests. Given the facts of this case, A.M. has failed to demonstrate he received ineffective assistance of counsel, so we affirm the trial court.

## Factual and Procedural History

Born in June 2002, A.M. has a long history with the juvenile justice system. At the age of ten, he had already committed three delinquent acts amounting to Class D felony battery with bodily injury if committed by an adult. He attended an alternative schooling program for several years, where he received special education and outpatient services for an emotional disability. During his time at the school, A.M. received multiple suspensions and several referrals to the juvenile court for fighting, violence against school staff, destruction of property, and possession of

marijuana. Eventually, the school expelled him for "fail[ing] to comply," finding no relationship between his behavior and his disability and only slight progress in his outpatient program. Appellant's App. Vol. II, p. 128.

In July 2017, A.M. and his friends approached a younger boy at the Kosciusko County fairgrounds, forcing him into an abandoned tent so that A.M. could fight him. A.M. beat the other boy and kicked him repeatedly in the head while he was down, leaving him with severe injuries requiring medical treatment. A.M. later threatened the boy with a text message stating, "You better not tell the cops about this." *Id.* at 15, 53–54.

This incident ultimately led to a true finding of disorderly conduct, a Class B misdemeanor if committed by an adult. The juvenile court placed A.M. on supervised probation until the age of eighteen. But in the months that followed, he consistently failed to abide by the terms of his probation—leaving home without permission, threatening his family, skipping school, staying out past curfew, spending time with another juvenile delinquent, and missing his mental-health evaluations. Police also suspected his involvement in the burglary of a classmate's home.

Because his actions posed a danger to others, and out of concern for A.M.'s safety and best interests, the probation department recommended his placement with the Department of Correction (DOC). In its modification report, the probation department also opined that placement in the DOC would ensure A.M. received the necessary education and services.

During a modification hearing in February 2018, A.M.'s counsel, who had defended the juvenile against past delinquency allegations, negotiated with the prosecutor to redact certain allegations from the Petition to Modify, including allegations that A.M. committed unrelated acts constituting residential burglary and theft of a handgun if committed by an adult. A.M.'s counsel also prevented A.M. from having to admit allegations that he consumed alcohol on the school bus. A.M. did, however, admit to allegations that he battered a random boy at the bus stop and that he committed various status offenses. A.M.'s counsel also made the following statement to the court:

I am befuddled by the action of [A.M.]. I think he's a good kid. I think he's got a bright future ahead of him. He's smart, has some real opportunities, but the path he's going down is leading him to prison and he's just going to end up wallowing away there, probably spend most of his life there. You don't break into people's houses, you don't steal guns, don't follow the rules, get kicked out of school. You don't get an education and that's going to end up being his downfall. I think except for being kicked out of Gateway, he could have had an opportunity here. He could have been on home detention and shown everybody that he could do right. Instead he's going to go to the DOC, go to Logansport for an evaluation, do his six months, eight months or a year, as long he does right, and hopefully will come back and have learned a lesson. I have a lot of hope for [A.M.]. I hope he understands that what's going to happen here is not a punishment but rather a chance to get a leg up in life and try to do the right thing. I hope he does good, and when he comes back he can really grow and be a good kid.

Tr. pp. 6–7.

In adopting the probation department's recommendation, the juvenile court committed fifteen-year-old A.M. to the DOC for an indeterminate period.

A.M. appealed, arguing that he received ineffective assistance of counsel. Our Court of Appeals unanimously denied A.M.'s claim in a published opinion. *A.M. v. State*, 109 N.E.3d 1034 (Ind. Ct. App. 2018). We now grant transfer, thereby vacating the Court of Appeals opinion in part[1]

---

[1]A.M. also claimed that the juvenile court abused its discretion by failing to obtain and consider all information relevant to his unique and varying circumstances, and by failing to adequately explain its reasons for imposing the most severe disposition, despite the existence of intermediary dispositional alternatives that had not yet been utilized. Our Court of Appeals rejected these arguments, which we summarily affirm. *See* Ind. Appellate Rule 58(A)(2).

to decide the following unanswered question of Indiana law: What review standard controls juvenile ineffective-assistance-of-counsel claims?[2]

## Standard of Review

A juvenile's constitutional and statutory rights to effective counsel are issues of law, which we review de novo. *R.R. v. State*, 106 N.E.3d 1037, 1040 (Ind. 2018); *see generally Bridges v. State*, 260 Ind. 651, 299 N.E.2d 616 (1973); Ind. Code §§ 31-32-2-2, -4-1.

## Discussion and Decision

The parties agree the United States Constitution guarantees A.M. the right to effective assistance of counsel. They even agree that the Fourteenth Amendment's due process clause affords A.M. that right. They disagree, however, over the proper standard courts should employ when evaluating whether counsel renders ineffective assistance to a juvenile, like A.M.

A.M. contends his ineffective-assistance-of-counsel claim must be evaluated under the Supreme Court's well-established Sixth Amendment standard in *Strickland v. Washington*—i.e., deficient attorney performance that prejudices the client's criminal defense.[3] *See* 466 U.S. 668, 687 (1984). The State counters that, because his right to counsel flows from the

---

[2] Since A.M. challenges his counsel's performance in the disposition-modification hearing only, and not the prior adjudicative or dispositional phases, we confine this opinion to claims of ineffective assistance of counsel during a disposition-modification hearing. As the State acknowledged at oral argument, the adjudicative and dispositional phases differ from disposition modification and the question of what constitutes ineffective assistance in those phases may not be the same. But, more importantly, the State noted how the question of ineffectiveness in those phases is not properly before us. *See* Oral Argument at 17:50–18:50, 34:20–34:35. Therefore, we leave for another day the decision of what ineffective-assistance-of-counsel standard governs in the adjudicative and initial dispositional phases, particularly whether our opinion in *S.T. v. State*, 764 N.E.2d 632 (Ind. 2002), was rightly decided.

[3] A.M. makes no separate ineffective-assistance-of-counsel claim under the Indiana Constitution.

Fourteenth Amendment, A.M.'s claims of ineffectiveness must be evaluated under a due process standard governing civil proceedings, not *Strickland*'s standard for criminal proceedings.

According to the State, the distinction between these two standards is important because the latter applies to civil proceedings (as in the juvenile justice context), which impose a less stringent standard. The due process standard for evaluating ineffective assistance of counsel—though applied in various contexts and using varying language—essentially asks whether counsel represented the client in a procedurally fair proceeding that yielded a reliable judgment from the trial court. *See, e.g., Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989) (declining to apply *Strickland*'s "rigorous standard" to assess the performance of counsel in post-conviction cases); *Graves v. State*, 823 N.E.2d 1193, 1196 (Ind. 2005) (applying *Baum* rather than *Strickland* to claims of ineffective post-conviction counsel); *Baker v. Marion Cty. Office of Family and Children*, 810 N.E.2d 1035, 1039–41 (Ind. 2004) (declining to apply *Strickland* to assess counsel's performance in cases involving termination of parental rights); *Childers v. State*, 656 N.E.2d 514, 517 (Ind. Ct. App. 1995) (declining to apply *Strickland* to assess counsel's performance in probation revocation case).

On one hand, we agree with the State that the constitutional genesis for a child's right to effective counsel differs from that for the criminal defendant—and different origins yield different tests. But on the other hand, we cannot endorse a less stringent standard for children, given their vulnerability and the special relationship children share with the State by way of the *parens patriae* doctrine. Looking both at the constitutional and statutory origins for a child's right to counsel, along with the juvenile system in which that right manifests, we see that a child's attorney assumes a role in a disposition-modification hearing that is altogether different from an attorney in a criminal proceeding. Accordingly, we conclude that a child's ineffective-assistance-of-counsel claim in a disposition-modification hearing is better evaluated under a Fourteenth Amendment due process standard, not the Sixth Amendment's *Strickland* test.

Yet we also conclude that *Baum*'s standard, which basically asks only whether the attorney was present, provides too low a benchmark for measuring counsel's performance in juvenile proceedings. So today we apply a due process test assessing the ineffective assistance of counsel that takes into account the distinguishing features of juvenile law. This test considers counsel's overall performance and then focuses on whether that performance ensured the juvenile received a fundamentally fair hearing that resulted in a disposition serving the child's best interests.

## I. A.M.'s right to effective counsel comes from the Fourteenth Amendment's due process guarantee and, therefore, must be evaluated under a due process standard and not the *Strickland* standard.

Over fifty years ago, the Supreme Court of the United States handed down its landmark decision in *In re Gault*, holding that juveniles have a constitutional right to counsel in delinquency proceedings. 387 U.S. 1, 36–37 (1967), *abrogated on other grounds by Allen v. Illinois*, 478 U.S. 364 (1986). Recognizing that juvenile delinquents could potentially face a "loss of . . . liberty . . . comparable in seriousness to . . . felony prosecution[s]," the high Court concluded the due process clause of the Fourteenth Amendment requires that juveniles have counsel to ensure they receive fair proceedings. *Id.* at 36, 41. As with an adult criminal defendant, the Court explained, a "juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it." *Id.* at 36 (footnote omitted).

Though at the time *Gault* was decided, Indiana had long "followed the 'fair treatment' under 'due process' rule in dealing with juvenile problems," this Court, in *Bible v. State*, expressly acknowledged the Supreme Court's mandate that "Fourteenth Amendment standards of procedural due process are applicable to juvenile proceedings." 253 Ind. 373, 385, 387–88, 254 N.E.2d 319, 325, 326 (1970). In evaluating the due process demands for juveniles (in the context of a child's right to a jury

trial), this Court—citing the State's *parens patriae* power—rejected an approach of grafting criminal standards wholesale onto juvenile matters because significant differences separate juvenile from criminal proceedings. *Id.* at 321–23 (discussing the history of juvenile law in Indiana). Unlike their criminal counterparts, Indiana's juvenile courts provide a child "the closest scrutiny and care in order to help him to avoid a life of crime." *Id.* at 323. To that end, under Indiana law, juvenile delinquency hearings are "conducted free from the formalities, procedural complexities, and inflexible aspects of criminal proceedings." *Id.* Considering these differences this Court concluded that "the constitutional safeguards vouchsafed a juvenile in [delinquency] proceedings are determined from the requirements of due process and fair treatment, and not by the direct application of the clauses of the Constitution which in terms apply to criminal cases." *Id.* at 326 (internal quotation marks omitted) (quoting *Pee v. United States*, 274 F.2d 556, 559 (D.C. Cir. 1959)).

In the years since *Bible*, we've elaborated on the differences between the juvenile and criminal systems, namely how the *parens patriae* doctrine animates the former system, setting it apart from the latter in both theory and practice. We've explained that Indiana's juvenile justice system gives "the court the power to step into the shoes of the parents" in order to "further the best interests of the child." *In re K.G.*, 808 N.E.2d 631, 635, 636 (Ind. 2004). This foundation for juvenile law distinguishes it from criminal law because, while children generally enjoy the same constitutional guarantees against governmental deprivation as adults, "the State is entitled to adjust its legal system to account for children's vulnerability and their needs for 'concern, . . . sympathy, and . . . paternal attention.'" *Id*. at 636 (quoting *Bellotti v. Baird*, 443 U.S. 622, 635 (1979)). Reflecting this goal, our statutory law gives judges "broad discretion" over juvenile proceedings. *Id.*

Almost half a century removed from *Gault* and *Bible*, we heed their lessons still. Though parallels exist between Indiana's criminal and juvenile systems, there remain significant differences separating the two, not least of which are the constitutional origins for criminal and juvenile rights. Since a juvenile's constitutional rights arise from the Fourteenth

Amendment's due process guarantee, they must be applied and assessed through a due process lens. Nevertheless, as we discuss below, we do not see the *Baum* standard as a suitable test to evaluate A.M.'s (and similarly situated juveniles') ineffective-assistance-of-counsel claims.

## II. A test founded in due process that ensures the juvenile fundamental fairness must be applied to assess counsel's effectiveness in a disposition-modification hearing.

Though we decline to adopt the Sixth Amendment's rigorous *Strickland* standard, we do not believe due process provides juveniles—vulnerable as they are—with "lesser standard[s]." *See Baum*, 533 N.E.2d at 1201. As the Supreme Court of the United States said in *Gault*, the child needs counsel's "guiding hand" to navigate "every step in the proceedings against him." 387 U.S. at 36 (citation omitted). We do not see *Baum*'s standard—which essentially asks only whether the attorney appeared to represent her client in a fair proceeding that resulted in a judgment—as an adequate measure of counsel's performance in juvenile matters. We, therefore, elect to bypass *Baum*'s test and apply a different due process standard to assess whether counsel rendered the juvenile ineffective assistance in the disposition-modification hearing.

We find that standard in cases evaluating parents' right to counsel in termination-of-parental-rights (TPR) proceedings. On first impression, it may seem inapt to compare a parent's right to effective assistance of counsel in a TPR matter to a child's right to effective counsel in a delinquency-modification proceeding. But these two groups of litigants share striking similarities. First, both the parents' and the child's rights to counsel share the same statutory and constitutional origins. I.C. § 31-32-4-1; *see* U.S. Const. amend. XIV, § 1. Second, these statutory and constitutional rights are vindicated in parallel proceedings that are "dramatically different from criminal proceedings" because they focus on the best interests of the child and not the child's guilt or innocence. *See Baker*, 810 N.E.2d at 1037, 1039.

In *Baker*, this Court, when considering the method of assessing an ineffective-assistance-of-counsel claim in TPR proceedings, rejected both the *Strickland* and *Baum* standards. *Id.* at 1036–37. The Court opted instead to tweak *Baum*'s due process test to address the important interests at stake:

> Where parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest.

*Id.* at 1041 (footnote omitted).[4] In articulating this test, this Court reasoned that, "[b]ecause of the doctrine of Parens Patriae and the need to focus on the best interest of the child, the trial judge, who is the fact finder, is required to be an attentive and involved participant in the process." *Id.* (quoting *In re Adoption of T.M.F.*, 573 A.2d 1035, 1042–43 (Pa. Super. 1990)). We observed that, since TPR and juvenile proceedings require "judicial involvement that is much more intensive" than in most criminal cases, "the role of the lawyer, while important, does not carry the deleterious impact of ineffectiveness that may occur in criminal proceedings." *Id.* (quoting *In re Adoption of T.M.F.*, 573 A.2d at 1042–43).

---

[4] The *Baker* Court labeled its ineffective-assistance-of-counsel test as a "similar approach" to *Baum*. 810 N.E.2d at 1041 n.6. And in *Graves*, this Court described our *Baker* test as "something akin to the *Baum* standard." 823 N.E.2d at 1196 n.4.

We find *Baker*'s reasoning instructive and relevant to the question before us now. Indeed, because of the similarities between parents' and children's due process rights, and between the roles of the court and counsel in TPR and juvenile proceedings, we draw on *Baker* to establish an ineffective-assistance-of-counsel standard for cases like the one before us today.

So, when a juvenile raises an ineffective-assistance-of-counsel claim following a modified disposition, we focus our inquiry on "whether it appears that the [juvenile] received a fundamentally fair [hearing where the] facts demonstrate" the court imposed an appropriate disposition considering the child's best interests. *See id.*; I.C. § 31-37-18-6. In assessing fundamental fairness, a court should not focus on what the child's lawyer might or might not have done to better represent the child. Rather, the court should consider "whether the lawyer's overall performance was so defective that the . . . court cannot say with confidence that the" juvenile court imposed a disposition modification consistent with the best interests of the child. *See Baker*, 810 N.E.2d at 1041.

We now turn our attention to the facts before us to determine whether, under this standard, A.M.'s counsel performed ineffectively.

## III. A.M. received effective assistance of counsel during his disposition-modification hearing.

A.M. believes his attorney failed to effectively assist him during the modification hearing because his counsel expressed confusion at A.M.'s downward-spiraling behavior rather than advocate for a placement other than the DOC. *See* Oral Argument at 1:15–2:02. But counsel's argument, when considered in context, reflected what everybody else in the courtroom already knew—that this was A.M.'s last chance. Parsing

through the record,[5] and considering counsel's overall performance, we see that counsel collaborated with the judge, the probation officer, and the prosecutor to ensure A.M. received a fundamentally fair proceeding that resulted in an appropriate disposition serving A.M.'s best interests.

The record shows that counsel negotiated an agreement in which the burglary and drinking allegations against A.M. were dropped. What's more, counsel's statement at the hearing acknowledged A.M.'s strengths and weaknesses, offering a candid assessment of A.M.'s situation. Without glossing over A.M.'s faults, counsel advocated for his client, calling him "a good kid" with "a bright future ahead of him." Tr. pp. 6–7. Counsel also noted that A.M.'s best interests required that he attend school, which meant receiving an education through the DOC since he'd been expelled from the alternative program. Ultimately, counsel expressed hope that, through a modified disposition to the DOC, A.M. could be rehabilitated from a juvenile delinquent to a law-abiding adult.

When the judge sits in a parental role over a collaborative setting, good advocacy may not include adversarial argument that highlights the juvenile's positive traits alone. In proceedings that turn on the best interests of the child given the past and present circumstances, effective assistance of counsel that ensures fundamental fairness may take different forms and tones. Considering counsel's overall performance here, we cannot say he performed so defectively that we lose confidence in the juvenile court's disposition modification. Given A.M.'s inability to rehabilitate in less-restrictive settings, his expulsion from school, and his increasingly violent behavior, placement in the DOC proved consistent with his best interests. In our view, A.M.'s counsel helped ensure A.M. received a fundamentally fair hearing where the court reached an accurate disposition that furthered his best interests.

---

[5] Because A.M. brought this ineffective-assistance-of-counsel claim on direct appeal rather than a Trial Rule 60(B) motion, we have a limited record before us. For example, we do not have the benefit of testimony revealing how the parties, probation, A.M.'s parents, and the court arrived at the decision to make A.M. a ward of the DOC.

# Conclusion

For these reasons, we affirm the juvenile court's order that modified A.M.'s disposition to the DOC.

Rush, C.J., and David and Massa, JJ., concur.
Slaughter, J., concurs in judgment with separate opinion.

ATTORNEYS FOR APPELLANT
Cara Schaefer Wieneke
Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR AMICI CURIAE JUVENILE LAW CENTER AND NATIONAL JUVENILE DEFENDER CENTER
Amy Karozos,
Greenwood, Indiana

Marsha L. Levick
Juvenile Law Center
Philadelphia, Pennsylvania

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General

Stephen R. Creason
Angela N. Sanchez
Lee M. Stoy, Jr.
Deputy Attorneys General
Indianapolis, Indiana

**Slaughter, J., concurring in judgment.**

I agree with the Court that A.M.'s ineffective-assistance-of-counsel claim lacks merit. I also agree that A.M.'s claim is not governed by the rigorous standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Only cases implicating the Sixth Amendment's right to counsel trigger *Strickland* scrutiny. Instead, for non-criminal cases, counsel's effectiveness is subject to the minimal procedural-due-process standard under the Fourteenth Amendment, which requires fundamental fairness. As we have held, counsel meets this standard "if counsel in fact appeared and represented the [client] in a procedurally fair setting which resulted in a judgment of the court". *Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989). Relief to the client is thus available only "in the 'extraordinary circumstances'" that the lawyer "abandoned the case and prevented the client from being heard". *Graves v. State*, 823 N.E.2d 1193, 1196 (Ind. 2005) (quoting *Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2004)). See also *Waters v. State*, 574 N.E.2d 911, 912 (Ind. 1991) ("Counsel, in essence, abandoned his client and did not present any evidence in support of his client's claim."). This is, to be sure, a low bar for assessing whether counsel was constitutionally ineffective.

We have previously invoked *Baum*, or a standard like *Baum*, in other fundamental-fairness inquiries. See *Graves*, 823 N.E.2d at 1196; *Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1041 n.6 (Ind. 2004). But the Court today announces a heightened "*Baum*-plus" standard for assessing counsel's effectiveness in this juvenile, non-criminal proceeding: whether counsel's overall performance at the disposition hearing "was so defective that . . . [we] cannot say with confidence that the juvenile court imposed a disposition modification consistent with the best interests of the child." (Internal citation omitted).

My objection to the Court's approach is that I do not perceive any meaningful difference between the "*Baum*-plus" standard the Court embraces today and the *Strickland* standard it purportedly rejects. *Strickland* asks whether counsel's performance fell below some minimal level of competence, and whether the sub-par performance was prejudicial. Today's "*Baum*-plus" standard also is a two-prong inquiry,

asking whether counsel's performance was deficient and, if so, whether the client was prejudiced. Prejudice under *Strickland* is straightforward—the result of the proceeding likely would have been different had counsel performed capably. But prejudice under the Court's "*Baum*-plus" standard is unclear and prompts more questions than answers, including what "best interests of the child" even means in these proceedings:

- Is it solely a results-based inquiry?
- Or does process matter?

Also unclear is what yardstick applies for assessing whether a given disposition serves the child's best interests:

- Is the child's own view dispositive?
- Is the child's view even relevant?
- Is it appropriate to ask the paternalistic question whether the outcome is good for the child's long-term interest, even if the child does not presently see things that way?

Yet another question is whether there must be a causal link between the lawyer's deficient performance and the judicial outcome? In other words, if the court would have decided the matter contrary to the child's best interests even if counsel had performed competently, should it matter that counsel was not up to snuff? The answers to these questions are not self-evident. Rather than wrestle with these questions, I would simply apply the *Baum* standard and, on this record, affirm the trial court.

For these reasons, I concur in our Court's judgment but do not join its opinion.